JOHN W. BREIDENTHAL, *as Chairman of the Kansas State Central Committee of the People's Party*, v. W. C. EDWARDS, *as Secretary of State of the State of Kansas.*

No. 10726.

1. AUSTRALIAN BALLOT LAW — *objections to nominatiny certificate under § 10 overruled, duty of Secretary of State to certify to clerks ministerial only.* After the hearing and overruling by the tribunal provided for by section 10 of the Australian Ballot Law of all objections to the nomination certificate filed by authority of a state convention of a political party, the further duties of the Secretary of State as to certification under section 13 of said law are ministerial only, and he has no right to challenge, and the courts have no authority to consider, the motives actuating any political party convention in its course, and he should certify any proper and requisite matter duly appearing on the nomination certificate.

2. —————— *vice-presidential candidate cannot prevent use of name as addition to his party's appellation on state ticket.* A vice-presidential candidate whose name (together with that of his associate presidential candidate) has been certified by authority of a state convention of his party as an addition to the party appellation, and who has not declined the national nomination, nor withdrawn as a candidate in Kansas, has no right under section 8 of said Australian Ballot Law to forbid such use of his name on the electoral ticket nominated by his party in this state.

*Original Proceeding in Mandamus.*

WRIT GRANTED.                    OPINION FILED OCTOBER 27, 1896.

THE following facts appear from the alternative writ of *mandamus* and the answer thereto : That at a National Convention of delegates of the People's Party, held in July, 1896, William J. Bryan was nominated for President and Thomas E. Watson for Vice President; that, afterward, in August, 1896, a State Convention of said party, held at Abilene, indorsed said national nominations, and 10 candidates were nominated as electors for President and Vice President to be voted for at the ensuing general election ; that in

due time and form there was filed in the office of the Secretary of State a certificate signed and verified by the presiding officer and the secretary of said convention setting forth the names and residences of said candidates for electors, giving the name "People's Party" as the party represented by said candidates, and naming William J. Bryan and Thomas E. Watson as its candidates for President and Vice President, respectively, as an addition to be made to the party appellation "The People's Party"; that objections in writing to said certificate were filed, and, after due notice, were considered by the Secretary of State, the Auditor of State, and the Attorney General, and on October 17, 1896, were decided not to be valid and said certificate was held to be valid and effectual, and no other or further objections have been filed or considered. Yet, on the same day, the Secretary of State received from Abe Steinberger, Secretary of the Middle-of-the-Road Populist Committee of the State of Kansas, a telegram in the following words and figures, to wit:

"THOMPSON, GA., Oct. 16.

"*Abe Steinberger, Topeka, Kan.:* Hand this request to Secretary of State: Do not certify my name on Abilene ticket to county clerks. My affidavit withdrawing my name has been mailed to you.

THOMAS E. WATSON."

And accompanying said telegram was the affidavit of said Steinberger as follows, to wit:

"STATE OF KANSAS, SHAWNEE COUNTY, ss.

"I, Abe Steinberger, being duly sworn according to law, depose and say, that I am the duly authorized agent and representative in the State of Kansas of Thomas E. Watson, the Populist nominee for Vice President; and that I am fully empowered and have been authorized, as evidenced by telegram filed herewith; and as such agent and representative, and

with the further knowledge that the said Thomas E. Watson's refusal to permit his name to appear on such ticket, accompanied by required affidavit, has been mailed to the Secretary of the State of Kansas, I hereby protest against the certification by the Secretary of State of the name of the said Thomas E. Watson on the so called People's Party ticket, over the names of the Bryan and Sewall electors named at the Hutchinson Democratic Convention and pretended to have been named at the Abilene People's Party Convention and I request that the Secretary of State omit the name of Thomas E. Watson from the heading of such ticket.            A. STEINBERGER.

" Subscribed and sworn to before me this 17th day of October, 1896.

T. S. STOVER, *Assistant Secretary of State.*"

And on October 19, 1896, the Secretary of State received by mail a notice from said Thomas E. Watson as follows, to wit ·

" STATE OF GEORGIA, COUNTY OF McDUFFIE, ss.

" I withdraw as candidate for Vice President on ticket nominated at Abilene, Kansas, and decline to have my name used upon official ballot upon that ticket, it being placed there to deceive Populist voters to vote for Democratic electors. THOS. E. WATSON.

" Sworn to and signed before me this Oct. 16, 1896.
[SEAL.]                    JOHN A. FAUCETT,
*Ordinary of McDuffie County, Georgia.*"

The electors named in the certificate of nomination of the People's Party are the same as those certified as electors of the Democratic Party whose national nominees for President and Vice President are William J. Bryan and Arthur Sewall respectively, and said electors are members of the Democratic Party.

It is further alleged in the answer that if said electors are chosen they will not vote for Thomas E. Watson for Vice President, and that it is desired to use his name at the head of said ticket to mislead the

voters of the State and to induce them to vote for said electors under the belief that they are voting for electors belonging to the People's Party, and who will vote for said Thomas E. Watson for Vice President if chosen. The allegations in the answer not included in the foregoing relate only to matters of law.

The plaintiff moved for a peremptory writ of *mandamus* notwithstanding the answer.

*G. C. Clemens*, for plaintiff.

*F. B. Dawes*, Attorney General, *A. A. Godard*, and *Waggener, Horton & Orr*, for defendant.

MARTIN, C. J.    I. This case involves certain of the duties of the Secretary of State under the Australian Ballot Law, being chapter 78, Laws of 1893. Section 6 relates to the form of the certificate and provides, that "in case of electors for president and vice president of the United States, the names for the candidates for president and vice president may be added to the party or political appellation"; and section 14, relating to the printing of the names of the candidates under the proper party appellation or group, enacts that "the ballot shall contain no other names, except that, in case of electors for president and vice president of the United States, the names of the candidates for president and vice president may be added to the party or political organization." Section 13 reads as follows : —

" Not less than fifteen days before an election to fill any public office, the secretary of state shall certify to the county clerk of each county within which any of the electors may by law vote for the candidates for such office, the name and residence of each person nominated for such office, as specified in the certifi-

cates of nomination or nomination papers filed with the secretary of state.''

It will be observed that section 13 does not expressly provide for the certification of the names of presidential candidates, nor even of the party appellation; but as the certification would be unintelligible without the latter, we think it, and also any proper addition of the name of presidential and vice-presidential candidates, to be fairly included within the phrase ''as specified in the certificates of nomination or nomination papers.'' In these respects a certificate of nomination is the guide to the Secretary of State, and he should follow it in giving directions to the County Clerk as to the making up of the official ballot. We think it plain that he has no right to omit the party appellation, nor the names of the presidential and vice-presidential candidates added to the party appellation by authority of law and properly appearing in the certificate.

1. Duty of Secretary of State ministerial.

The motion for a peremptory writ of *mandamus* notwithstanding the answer is in the nature of a demurrer, and, for the purposes of this hearing, admits every allegation of fact well pleaded in the answer. It does not admit conclusions of law, nor prophecies, nor general allegations of fraud unaccompanied by any statement of fact on which fraud is based, nor matters which the defendant has no right to plead nor the Court jurisdiction to entertain. The allegation in the answer that the electors named in the certificate will not vote for Thomas E. Watson for Vice President is clearly not one of fact, and the Court should not be guided by the pretense of any one to the powers of divination. In such cases courts must deal with facts, not with prophecies.

Besides if these electors should be chosen they will
be under no legal obligation to support Sewall, Wat-
son, or any other person named by a political party,
but they may vote for any eligible citizen of the
United States. (Article XII of Amendments to the
Constitution of the United States.)   And neither the
Secretary of State nor any court may interfere with
them in the performance of their duties.   The charge
made by the Secretary of State that it is desired to
use the name of Watson at the head of the People's
Party ticket to mislead the voters must be disregarded
for several seasons : *First*, as to his separate official
duties under this statute he is a mere ministerial offi-
cer and not a censor of political parties nor a guardian
of the public morals ; and it follows that he has no
authority to make such a charge.   *Secondly*, the only
facts upon which any claim of fraud is based are that
the certificate gave the party appellation as the Peo-
ple's Party and named the national candidates as an
addition thereto, and then stated the names and resi-
dences of the candidates nominated by the convention
as presidential electors, and these were Democrats
and the same men who were nominated for a like
place by the Democratic Party ; but this must be held
admissible under *Simpson v. Osborn*, 52 Kan. 328.
*Thirdly*, this Court has no authority to investigate
and pass judgment upon the motives which actuate
any political party convention in its course ; for this
is not jurisprudence but politics.   *Fourthly*, although
the record does not show the nature of the objections
made to the certificate before the Secretary of State,
the Auditor of State and the Attorney General, and
overruled by that tribunal on October 17, 1896, yet it
is presumable that all proper matters of objection
were then heard and decided.

22—57 KAN.

After the hearing and overruling of all objections by the tribunal provided for by section 10 of said act, it was the plain duty of the Secretary of State to certify the names of the presidential and vice-presidential candidates of the People's Party as specified in the nomination certificate, unless the papers emanating from Watson and Steinberger relieved him from it.

II. What if any effect should be given to the communications and documents signed by Watson and Steinberger? Section 8 of said act provides that—

"Any person whose name has been presented as a candidate may cause his name to be withdrawn from nomination by his request in writing signed by him and acknowledged before an officer qualified to take acknowledgment of deeds and filed with the secretary of state not less than fifteen days . . . previous to the day of election, and no name so withdrawn shall be printed upon the ballots."

The telegram and the affidavit of Steinberger should be disregarded; and it is doubtful if the affidavit of Watson filed October 19 was in due time or in proper form. The certificate of the ordinary (an officer in Georgia nearly answering to a probate judge in Kansas) is in form a jurat and and not an acknowledgment. But waiving these questions as to time and form we think that the document is entirely ineffectual.

Watson was not nominated by the Abilene Convention; and how shall a man withdraw from a nomination which has never been conferred? That convention had no right to nominate a candidate for Vice President, to be voted for at the next election. It did nominate 10 electors to be voted for at that election. Doubtless any one of them might have withdrawn by complying with said section 8. A Vice

2. One cannot prevent use of name as candidate for Vice President on State ticket.

President is not elected at the General Election held in November. He should be elected on the second Monday in January, and only 10 citizens of Kansas will have a voice in the matter. In a legal sense the people of this State vote for no candidate for President or Vice President, that duty being delegated to 10 citizens who are authorized to use their own judgment as to the proper eligible persons to fill those high offices. Again, Mr. Watson does not attempt to decline the national nomination, nor even withdraw as a candidate in Kansas — if such a thing can be done ; but he says he declines to have his name used upon a certain official ballot. He does not " withdraw from nomination" within the meaning of said section 8. No national candidate for President or Vice President residing elsewhere has as much authority as the humblest voter in this State to dictate how his name shall be used on an official ballot here.

The order of the Court is that the Secretary of State shall forthwith duly certify to the county clerks of this State the names and residences of said nominees for electors of President and Vice President, and that he add to the party appellation of " The People's Party " the name of William J. Bryan as said Party's candidate for President and the name of Thomas E. Watson as said Party's candidate for Vice President.

ALLEN, J., concurring.

JOHNSTON, J. (dissenting). Thomas E. Watson is endeavoring to prevent the use of his name as a candidate for Vice President upon what has been designated "The Abilene Ticket," because, as he states upon oath, it was " placed there to deceive Populist voters to vote for Democratic electors." In obedience to his request and withdrawal, the Secretary of State in cer-

tifying the names of candidates to county clerks proposed to omit the name of Watson from that ticket. The extraordinary remedy of *mandamus* has been employed to compel Watson to be a candidate upon the ticket against his protest, and, notwithstanding his withdrawal, to compel the Secretary of State to certify him as a candidate thereon.

It was argued that the withdrawal of Watson is informal, and further that he is not a candidate who can withdraw within the meaning of our election statute. The withdrawal is not exactly formal, but it appears to be a substantial compliance with the statute. In section 8 it is provided that the request shall be in writing, signed by the candidate and acknowledged before a competent officer. Watson's request was executed in the presence of an ordinary,— a judge of one of the courts of Georgia,— and, at the same time and before the same officer, Watson verified by his oath the facts stated in the withdrawal.

Is Watson a candidate? And under our statute is he entitled to withdraw? The nominees for President and Vice President are recognized and spoken of as candidates in the same statute which authorizes the withdrawal of candidates. In sections 6 and 14 they are specifically named as candidates; and then in section 8 it is provided that "any person whose name has been presented as a candidate may cause his name to be withdrawn from nomination by his request in writing," etc. It will be observed that the language is general, authorizing *any person* who has been presented as a candidate to withdraw; and the high rank of the office should not preclude the candidate from availing himself of the right of withdrawal. It is true, we do not vote directly for President and Vice President, but, according to the usage which has

prevailed for many years, personal selections are made by the electors with almost the same certainty that could be accomplished by a direct vote. It is well known that the preliminary steps to a national election are taken by political parties, and the candidates for President and Vice President are chosen by them. After nominations are made the adherents of the several parties in the several states put forward electors of the same political faith as the candidates, and these electors, if chosen, are in honor bound to vote for such candidates. Although there is no other obligation than that of honor resting upon electors so chosen, it is, as counsel for plaintiff remarked, impressive and noteworthy that, in all our history, no elector has ever violated his honor or betrayed the trust of those who elected him. It would seem to be proper, therefore, to treat them as candidates within the statute ; and the Legislature of Kansas, as we have seen, has so recognized them. It is strange indeed if there is no way for a national candidate to retire from a ticket, if his name should be placed there with a sinister purpose ; and that he should be denied the right of withdrawal where his name is merely used to cast a stigma upon him or to defeat the principles for which he stands. Apart from the question of formality, however, and granting that there is a chance for division of opinion as to whether national nominees for President and Vice President are candidates within the meaning of the statute, I am still firmly of the opinion that the peremptory writ should not be allowed. The right to this remedy depends upon the averments of the defendant's answer. As the case was submitted the facts stated in the answer stand confessed ; and, taking them to be true, as we must, the plaintiff is not entitled to the writ. It is admitted that the

Breidenthal v. Edwards.

purpose of using Watson's name at the head of the ticket is to mislead the voters of Kansas and induce them to vote for the electors on that ticket under the belief that they are voting for electors who will vote for Watson for Vice President. It is admitted that the electors on the ticket in question are the same as those on the Democratic ticket, who have been certified as electors to vote for the Democratic nominees for President and Vice President. It is further admitted that the electors, so named, are not members of the People's Party, to which Watson belongs, but are members of the Democratic Party ; and if chosen will not vote for Thomas E. Watson for Vice President of the United States. If these facts are true, the placing of Watson's name upon the ticket will be a palpable deception of the voters of the State and a great injustice to him. Shall the Secretary of State be compelled to participate in the deception and wrong ? and should the solemn mandate of the Court be employed to compel such participation? *Mandamus* is the highest judicial writ known to the law, and the Court is vested with large discretion in granting or withholding it. It is not always awarded where the Court has power to do so, but in the exercise of this discretionary power the Court is controlled by considerations of justice and equity. It is fundamental, in the law of *mandamus*, that the writ never will be granted where it will prove unavailing, effect a deception, or accomplish injustice. It is clear that the Court is not required to compel action that will mislead the voters of the State, or become an instrument in carrying out an injustice. One of the leading ideas in our Australian Ballot Law is the prevention of deception and fraud in the elections, and to obtain a free and intelligent expression of the voters. This

purpose will be frustrated and the aim of the law defeated by the proposed writ, if the averments of the answer be true.    That the statements of deception and wrong would be difficult to prove if denied, is no longer a matter of concern.    Proof is dispensed with by the admissions in the pleadings.    Watson has attempted in good faith to withdraw;  he bases his withdrawal on the fact that it will result in a deception of the voters;  the Secretary of State has yielded to his request;  and since it is admitted that the certification and placing of the name on the ballot will operate to mislead and deceive voters, the Court, in the exercise of a wise judicial discretion, should refuse the writ.