Moody v. Trimble.

---

CASE 20—ACTION FOR INJUNCTION—OCT. 10.

# Moody v. Trimble.

APPEAL FROM FRANKLIN CIRCUIT COURT.

ACTION BY SOUTH TRIMBLE AGAINST W. B. MOODY AND N. B. SMITH, CLERK OF THE FRANKLIN COUNTY COURT, TO ENJOIN SAID CLERK FROM RECOGNIZING DEFENDANT, MOODY AS THE NOMINEE OF THE DEMOCRATIC PARTY FOR CONGRESS, OR PLACING HIS NAME ON THE OFFICIAL BALLOT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT MOODY APPEALS.   AFFIRMED.

MOODY APPEALS—AFFIRMED.

ELECTIONS—NOMINATIONS—CONCLUSIVENESS.

Held.   The action of the governing authorities of a political party in declaring a certain person to be the nominee of the party for Congress, is   conclusive,   and will not be reviewed by the courts.

JOHN D. CARROLL AND W. S. PRYOR, FOR APPELLANT.

1. Appellee does not claim a certificate of nomination from the officers of the Paris convention. No primary election was held, and no legal certificate could be made of the committee's action, therefore appellee has not a legal certificate, and is not entitled to have his name placed on the ballot.

2. These facts are disclosed by the petition. The petition does not present a cause of action, and the demurrer to the answer should have been carried back and sustained to the petition.

The appellee is basing his claim to the nomination entirely upon the action of the 'State Central Committee, which was taken after the Paris convention had completed its work and adjourned. Ky. Stats., secs. 1453, 1458, 1460, 1461; Democratic Campaign Book, 1899; Cain v. Page, 19 Ky. Law Rep., 977; Lahest v. Shively, (Colo.), 50 Pac. Rep., 862; People v. Police Comrs., N. Y. Sup. Ct, 10 Mix Rep., 68.

JOHN W. RAY, ATTORNEY FOR APPELLEE.

1. The rule, adopted by the (late) Lexington convention, was not creating power, but merely directing an exercise of power already conferred, and of necessity, inherent in the governing authority of the party, creating or directing a tribunal to investigate and determine a question of fact within the party. Cain v. Page, &c. 42; S. W. Rep. 336; In re Fairchild, 151; N. Y., 359, 366.

2. The courts can not investigate all these purely party questions, it must leave them to the party authorities.

OPINION OF THE COURT BY CHIEF JUSTICE HAZELRIGG—AFFIRMING.

This appeal involves the correctness of the judgment of the Franklin Circuit Court, determining that the appellee is the regular nominee of the Democratic party in the Seventh Congressional District. These facts appear: The nominating convention met at Paris on July 10, 1900, and, after its final adjournment, both appellee and appellant claimed to have been regularly nominated, and each was insisting on having his name placed on the official ballot as such nomineee. At this juncture, the State convention of the Democratic party met at Lexington on July 19, 1900, and adopted the following resolution: "That whenever there are two or more persons claiming to have been nominated to any office of the Democrats of a congressional, railroad, or judicial district of the State, it shall be the duty of the State central committee to in-

Moody v. Trimble.

vestigate said conflicting claims, determine who is justly entitled to said nomination, or make such orders or rules as will result in the proper settlement of said dispute, and the finding of said committee shall be binding upon contestants for said office." The party law touching the powers and duties of the State central committee in existence when amended by the foregoing resolution was as follows: "The State central committee, a majority of the members concurring, shall have general control and supervision of all local committees and of all matters relating to or affecting party organization, and the management of election campaigns, and shall have full power in all cases affecting the interests of the party, and to take such action as it may consider necessary, or may at any time reorganize, or order a reorganization of, the local committees, or any one or more of them." Subsequently to the State convention the State central committee, after notice to the contending claimants for congressional nomination, took up the issue in dispute, and in settlement of it passed the following resolution: "At a meeting of the Democratic State central committee, held in the city of Covington, August 2d, the following resolution was prepared by a subcommittee and adopted by the State central committee: 'Whereas, there is a conflict in the Seventh Congressional District of Kentucky as to who is the true nominee of the Democratic party for Congress, the Hon. South Trimble and the Hon. W. B. Moody both claiming to be the regular party nominee, and this condition is liable to produce factional strife in the party in said district: Now, for the purpose of settling said contest between said claimants, and in order to give the Democratic voters of the district an opportunity of determining this contest and saying which one of the claimants is their choice for Congress.

and, whereas, the State central committee, in executive session, having heard the statements and arguments and papers adduced by either side to the said contest relative to the foregoing condition in said district, the committee decided and now holds that it is to the best interest of the Democratic party in said congressional district, and to the said claimants and contestants, that said contest be referred back to the Democrats of said district, be it therefore resolved by the Democratic State central committee of Kentucky: That a primary election be held in said Seventh Congressional District of Kentucky, and each voting place thereof, on the 29th day of September, 1900, for the purpose of deciding whether South Trimble or the Hon. W. B. Moody shall be the nominee for Congress in said district. The one receiving the highest number of votes at said primary election shall be declared the nominee. The said primary election shall in all respects be held under the provisions of the Carroll primary election law, as provided in the Statutes of Kentucky, and the election officers shall be divided equally between said Trimble and Moody. That the qualification of voters in the said primary election shall be the same as provided for by the State executive committee in the call made for the Democratic State convention held in Lexington on the 19th day of July, 1900. That a reasonable time be fixed by the congressional district executive committee, not later than August 20, 1900, at 12 o'clock noon, for said contestants to declare the entry into said primary, and pay such assessment as the said executive committee shall fix. In the event only one of the said contestants shall declare himself a candidate for said nomination and pay the assessment on or before the day fixed for entry, the executive committee for the Seventh Congressional District shall have the power, and it shall be

its duty, to call off the primary, and declare the contestant who has so paid the nominee, and certify his nomination to the various county court clerks of the district.' The executive committee of the Seventh Congressional District is directed to carry into effect the provisions of these resolutions." Claiming that neither the State nor the congressional committee had jurisdiction of the contest, the appellant, Moody, declined to enter the primary; and thereupon Trimble was duly announced by the district executive committee as the regular nominee of the party, as provided in the resolutions of the State central committee. Thereupon, appellant, Moody, still claiming to be the regular nominee, and the clerk of the Franklin County Court being about to recognize his claim, the appellee, Trimble, brought this action, seeking to have the action of the State central and executive district committees sustained, in declaring him the nominee, and to enjoin the clerk from recognizing Moody as such nominee, or placing his name on the official ballot. He rests his case, in his petition, on the facts heretofore briefly stated. Moody, by his answer, set up certain facts occurring at the Paris convention, which show that he was regularly nominated by that convention. By reply, Trimble controverts Moody's view of that convention, and sets up facts showing that he was the regular nominee of that meeting. At the time Trimble filed his reply, he filed a demurrer to Moody's answer, and the case was disposed of on this demurrer; the trial court holding the answer insufficient. This is to uphold the action of the governing party authorities of the State and the district, and, we think, is in accord with reason and precedent.

It is said by appellant, however, that there are certain statutory rights secured to a nominee, under the law, of

Moody v. Trimble.

which he can not be deprived by the governing authorities of his party, and especially can not be so deprived by action of those authorities taken after he has secured his rights. This may be true. We would doubtless hold that a nominee might enforce the rights to which he may be entitled under our statutes. But our statutes do not undertake to confer any definite legal rights on one whose title to the position of nominee is in dispute. In the present case, the contention by appellant that he is the regular nominee of the Paris convention, and is therefore entitled to have his name go on the official ballot, is met with a contention of similar import on his own behalf on the part of appellee. If the one has something in the nature of a vested right secured to him at the Paris convention, so has the other. The averments of the answer, taken in connection with those of the petition, and which are emphasized by the recitation of the Lexington resolution, show that there was a dispute, in good faith, as to who was the true nominee of the Paris convention. A settlement of this dispute might possibly be had in the courts, when the correctness of the various rulings of the presiding officers of the meeting would have to be inquired into, as well, possibly, as the regularity of the credentials of the various delegates. But, while we do not now decide that this can not be done, it is certain that such questions are political rather than judicial in their character, and therefore the court will entertain jurisdiction to settle them, if at all, only in the event the governing authorities of the political parties have failed to do so. The settlement of such questions, in the nature of things, should be left to party authority; and therefore we will not scan too closely party rules which undertake, however imperfectly, to confer authority on its various

Moody v. Trimble.

committees to manage party affairs to the best interests of the organization, nor deny such authority, even if it be conferred in terms somewhat general. We construe the party rules in force when the Paris convention met as sufficiently explicit to authorize the State central committee to settle disputes of the nature involved in this case, and especially do we think that authority existed in the State convention to provide a means, if none existed, of settling such disputes. This conclusion is in line with the decision of this court in Cain v. Page, (42 S. W., 336), where the authority of a State convention in a political matter was involved, and where we said: "We hold this action of the State convention to be a conclusive recognition of the O'Neal committee as the governing authority of the Democratic party in the district in question, beyond which action and recognition the court can not go. The voice of that convention was the very voice of the Democratic party. The word of the convention is the law of the party, and courts can not look beyond this word or this law, because there is no other. *In re* Pollard (Sup.) 25 N. Y. Supp., 385, the courts had theretofore recognized what was called the "Patterson Faction" of the Republican party in Seneca county, N. Y., as representing the true Republican party. But it appeared that subsequently to the decision the State convention ignored the adjudication, and recognized the opposing or Mongin faction. The court said it would have been courteous for the party convention to have adopted the decision of the court, but there was no way to compel it to do so, and consequently the only rule for courts and judges to adopt in such contests is "that they will interfere only in cases where there has been no adjudication of the question of reg-

ularity by some division of the party which is conceded to be superior in point of authority to the one in which the contention arose,—provided, of course, that the question of good faith in the making of such adjudication is not involved." And the court further said: "The adoption of a different view would inevitably tend to bring party organizations and courts into unseemly conflicts over questions which are peculiarly within the cognizance of the former tribunals,—a result which most certainly ought, if possible, to be avoided." It is true, the cases cited involved, apparently, only matters of the party organization, but they really involved party nominations as well; for upon the recognition of this or that committee or this or that faction the right of alleged nominees depended. But, if we say the superior governing authority is only chargeable with the duty of maintaining intact the organization of the party, still what will more surely disintegrate the organization than for its governing authority to neglect or refuse to settle promptly disputes of the kind involved here? It would seem to be distinctly and appropriately within the sphere of the party authority to prevent the disorganization of the party, by settling such disputes. In a New York case (*In re* Fairchild, 151 N. Y., 359, 45 N. E.; 943), it is said: "It is much more proper that questions which relate to the regularity of conventions, to the nominations of candidates, and the constitution of committees, should be determined by the regularly constituted party authorities, than to have every question relating to a caucus, convention, or nomination determined by the courts, and thus, in effect, compel them to make party nominations and regulate the details of party procedure, instead of having them controlled by party authority. We think that in cases where questions of pro-

cedure in conventions or the regularity of committees are involved, which are not regulated by law, but by party usages and customs, the officers called upon to determine such questions should follow the decision of the regular constituted authority of the party, and the court, in reviewing the determination of such officers, should in no way interfere with such determination." The judgment granting to Trimble the relief sought is affirmed.

Judge DuRelle does not concur in the principles announced in the opinion, as an original proposition, but concurs in the affirmance, because he thinks the question settled by the case of Cain v. Page (Ky.) 42 S. W., 336.