STATE, EX REL. GARN, v. BOARD OF ELECTION COMMISSIONERS OF MARSHALL COUNTY ET AL.

[No. 20,940. Filed October 31, 1906.]

1.  ELECTIONS.—Ballots.—Preparation of.—Political Parties.—While the printing and distribution of the official ballots are entrusted to public officers (§6214 Burns 1901, Acts 1889, p. 157, §17), still the selection and certification' of its candidates are left to the respective political parties. p. 282.

2.  SAME.—Nominations.—Ballots.—Election Commissioners.—Statutes.—Mandatory.—Section 6214 Burns 1901, Acts 1889,

State, *ex rel.*, *v.* Board, etc.—167 Ind. 276.

p. 157, §17, providing that the election commissioners shall place on the official ballot under the party emblem the nominees selected "at the time and place designated in the call of the regularly constituted party authorities," is in the highest degree mandatory.  p. 283.

3.  ELECTIONS.—*Political Parties.—Rules.—County Chairmen.— County Conventions.*—A county chairman regularly selected, under the call of the controlling state central committee, by the precinct committeemen, regularly chosen under the call of such state central committee, is, together with such precinct committeemen, the proper authority to call a county convention of such party.  p. 284.

4.  EVIDENCE.—*Judicial Notice.—Republican Party.*—Courts take judicial notice that there is but one Republican party in this State.  p. 284.

5.  ELECTIONS.—*Official Ballots.—County Nominations.—Political Parties.*—County nominations made by a convention not called by the county central committee selected under the regular call of the Republican state central committee, cannot be placed on the official ballots as the nominees of the Republican party.  p. 284.

6.  SAME.—*Official Ballots.—Nominations.*—Nominations made by a county mass convention called by persons who claimed to be, but who were not, the Republican county central committee, have no legal right to the party emblem on the official ballots.  p. 285.

7.  SAME. — *Political Parties.—Divisions—Courts.—Jurisdiction.* —Courts have jurisdiction to determine which of conflicting lists of candidates claimed to be made by a political party, is entitled to go on the official ballot under the emblem of such party.  p. 285.

8.  PLEADING.—*Mandamus.—Election Commissioners.—Ballots.— Certificates of Nominations.*—A petition for mandate against the county board of election commissioners to compel them to place the names of certain nominees on the official ballots, as those of a certain party, must allege that the nomination certificates filed therefor show that the nominating convention designated the title of the party and the figure or device to be placed upon the ballot, as provided by §6215 Burns 1901, Acts 1889, p. 157, §18.  p. 287.

9.  APPEAL AND ERROR.—*Record.—Trial.—Decisions.*—The trial of a cause upon appeal is by the record and not by briefs or argument of counsel.  p. 287.

10.  SAME.—*Supreme Court Rules.—Error in Record.—How Shown.*—Error, to be available on appeal, must be properly

saved in the trial court and presented in the Supreme Court according to the rules of practice therein prescribed.    p. 287.

11. APPEAL AND ERROR.—*Error.—How Shown.—Searching for, Though Not Pointed Out.*—The Supreme Court will not look beyond appellant's brief to ascertain errors for reversal, but may search the record to sustain the judgment, though appellee should file no brief.    p. 288.

12. SAME.—*Pleading.—Complaint.—Law of the Case.*—A reversal of a judgment sustaining a demurrer to a complaint necessarily settles plaintiff's right to judgment upon proof of the allegations of such complaint.    p. 288.

13. ELECTIONS.—*Official Ballots.—Election Commissioners.—Public Duty.*—An action to mandate the board of election commissioners to place on the official ballots the names of the nominees of a party is a matter involving the highest public interest.    p. 289.

14. APPEAL AND ERROR.—*Decisions.—Judgment.—Binding Force. —Election Commissioners.—Substantive Law.—Procedure.*— Appellees, the county board of election commissioners, are bound by the substantive law pronounced in the decision, on appeal, of a cause to which they were parties, though the judgment of the lower court in their favor was affirmed, such affirmance being occasioned by a mere matter of procedure.    p. 289.

From Marshall Circuit Court; *Harry Bernetha,* Judge.

Action by the State of Indiana, on the relation of Edward Garn, against the Board of Election Commissioners of Marshall county and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*John W. Parks* and *Merrill Moores,* for appellant.

*Charles Kellison, L. M. Lauer, H. A. Logan, Smith & Korbley* and *Morton S. Hawkins,* for appellees.

GILLETT, J.—September 29, 1906, relator, a citizen of Marshall county, filed his petition for an alternative writ of mandate, to require the board of election commissioners of said county, and John R. Jones and Francis Marion Burkett, constituting a majority of said board, to place on the official ballots, to be used at the next general election, in the second column of said ballot, under the device of

the eagle, and accompanied with the designation, "Republican ticket," a certain list of names of persons who had respectively been nominated for certain designated county offices. An alternative writ was issued by the court, and appellees Jones and Burkett appeared and filed separate demurrers to the writ. These demurrers were sustained, and final judgment was rendered against relator.

Aside from certain practice questions, counsel for appellees offer but one objection to the complaint, and that is based on the contention that the facts alleged at most show a case wherein the board has a discretion to determine which of the two tickets it will permit to go upon the ballot as the ticket of the Republican party.

It is alleged in the petition and writ that the manner in which the Republican party of Indiana is organized is as follows: "In every voting precinct in the State a precinct committeeman is biennially elected by the voters of the precinct at a time fixed by the state central committee. In every county the precinct - committeemen constitute the county committee, and choose their own officers under rules established by the state central committee, which consists, and for many years has consisted, of thirteen members, chosen one from each congressional district by the Republican voters of the district. In each district is a district committee consisting of the chairman of each county committee and of the member of the state committee for the district. The governing body of the entire organization is the state central committee, to which all local organizations and committees are inferior and subordinate." It fully appears that the adherents of said party in the thirty-three voting precincts of Marshall county met, pursuant to the call of said state committee, and elected precinct committeemen, who organized and selected relator as the chairman of the county organization; that said county committee and its chairman have at all times been recognized by the state committee; that the list of nominees, which the

relator seeks to have recognized as constituting the Republican ticket, was selected by a convention held upon a call issued by relator, by the direction of said county committee and pursuant to the rules of said state committee, to the Republicans of said county; that the convention, whose nominees it is charged appellees intend to recognize as constituting the candidates on the Republican ticket, was called by persons claiming to be members of the Republican county committee, but who were not such in fact, and that said convention, having been a mass convention, was held contrary to an existing rule of the state committee, which rule is specially pleaded. It is further alleged that although demand has been made upon defendants that they place the list of nominees of said first-mentioned convention in the second column of the ballot, under the name and device of the Republican ticket, said defendants have refused to state what they will do, but that it is their intention and purpose to postpone action until the adjournment of the September term of the Marshall Circuit Court, for the purpose of avoiding mandate proceedings, and that they will then, in the printing of the ballots, cause the other list of nominees to be set out thereon in the place and under the name and device of the Republican ticket.

The election law provides that "in each county in the State, the clerk of the circuit court and two persons by him appointed, one from each of the two political parties that cast the largest number of votes in the State at the last general election, shall constitute a county board of election commissioners. * * * It shall be the duty of such board to prepare and distribute ballots for election of all officers to be voted for in such county other than those who are voted for by all the electors of the State. §6214 Burns 1901, Acts 1889, p. 157, §17. The next section contains the following provisions: "The said board of election commissioners shall cause to be printed on the respective ballots the names of the candidates nominated by the conventions

of any party that cast one per cent of the total vote of the State at the last preceding general election, as certified to said boards by the presiding officer and secretary of such convention. * * * The certificate of nomination by a convention or primary election shall be in writing, and shall contain the name of each person nominated, his residence and the office for which he is nominated, and shall designate a title for the party or principle which such convention or primary election represents, together with any simple figure or device by which its list of candidates may be designated on the ballots; said certificate shall be signed by the presiding officer and secretary of such convention, or by the chairman and secretary of the county, city or township committee, who shall add to their signatures their respective places of residence, and acknowledge the same before an officer duly authorized to take acknowledgments of deeds. * * * In case of a division in any party, and claim by two or more factions to the same party name, or title, or figure, or device, the board of election commissioners shall give the preference of name to the convention held at the time and place designated in the call of the regularly constituted party authorities, and if the other faction shall present no other party name, title or device the board of election commissioners shall select a name or title, and place the same before the list of candidates of said faction on the ballot, and select some suitable device to designate its candidates. If two or more conventions be called by authorities claimed to be the rightful authorities of any party, the proper board of election commissioners shall select some suitable device to distinguish one faction from the other, and print the ballots accordingly. * * * Certificates and petitions of nomination of candidates for offices to be voted for by electors of any district or division of the State exclusively shall be filed with the clerks of the circuit courts of the counties or county included in or including such district or division." §6215 Burns 1901, Acts 1889, p.

157, §18.   Section 6222 Burns 1901, Acts 1897, p. 49, §1, provides that "the device named and list of candidates of the Democratic party shall be placed in the first column on the left-hand side of said ballot; and of the Republican party in the second column."

In the adoption of the Australian ballot system, under which a voter is required to register his choice upon an indistinguishable ballot, it was necessary that provision should be made by law whereby the printing and promulgating of the ballots should be taken out of the hands of political parties and individuals, and that the performance of these duties should be vested in public officers.   Although constrained to do this from the necessity of the case, yet the lawmaking power, recognizing the potency of political parties as agencies of government, and being cognizant of the fact that the integrity of such an organization largely depends upon its ability to place before voters, under the party insignia, a list of candidates for office who stand for those tenets concerning government that the organization is supposed to represent, made provision for the placing of party tickets upon the ballot.   As to the two larger parties, express provision was made concerning the place of each upon the ballot, it being provided that the list of candidates of the Democratic party should be placed in the first column and that the list of Republican candidates should occupy the second column.   In order, so far as possible, to avoid controversies relative to the question as to which of two or more lists of candidates should be placed upon the ballot under a particular party name and device, it was provided that in case of division in any party, accompanied by a claim of two or more factions of the party of the right to use the name and device thereof, preference should be given to the list of candidates nominated by a convention "held at the time and place designated in the call of the regularly constituted party authorities," and it was further provided that if the other faction

or factions failed to present some other party name and device, the board should select a name and device to designate the candidates thereof.

Where it appears that a list is composed of the nominees of a convention, which has been held at the time and place designated in the call of the regularly constituted

2.   party authorities, it is the duty of the board, there being a regular certificate of nomination, to set out such list of names in the proper place and under the party name and title, and this duty is in the highest degree mandatory. Having ascertained the facts stated, it is the plain duty of the board to follow the requirements of the statute. As was said in *State, ex rel.,* v. *Houser* (1904), 122 Wis. 534, 551, 100 N. W. 964: "The exclusive use of the party name by a particular organization, after it has achieved such significance as to be entitled to recognition as one specially privileged to appear on the official ballot, was evidently deemed by the legislature to be a matter of vital importance to such organization, to the candidates named by it, and to the people of the state at large. It was thought to be necessary to the integrity of the organization, and important to the people generally as an indication of the principles to prevail contingent upon the candidates bearing its stamp, so to speak, being elected. It was thought to be a matter of the highest importance to the electors, to the end that they might not be misled into indorsing principles in form to which they were opposed in fact." The same idea finds expression in *State, ex rel.,* v. *Metcalf* (1904), 18 S. Dak. 393, 100 N. W. 923, 67 L. R. A. 331, where it was said: "It is for the party to nominate; for the people to elect. The question is not, who shall be chosen to any particular public office? That is for the voters of all political parties to determine at the polls. It is simply, who shall represent the organization as its nominees? and certainly the determination of that question should be con-

trolled by the action of the party itself; otherwise, party nominations are impossible."

There can be no question under the facts pleaded that the Republican county central committee, of which relator is the chairman, was the regularly constituted authority for the calling of a convention of the Republican party in Marshall county. As we have seen, the manner in which the Republican party is organized in the State is specially pleaded. Basing the claim alone upon the facts which have been specially alleged, it appears that said committee has at least a pretty well fortified basis for the claim that it is the regularly constituted party authority in the matter of calling a Republican county convention.

However, since the great parties are agencies of government, and their organization and existence constitute facts of a public and general nature, which all well-informed persons are presumed to know, we are justified in affirming that we have judicial knowledge of the fact that there is but one party having the name of Republican party, to which any considerable portion of the citizenship of the State give adherence. When to this element of judicial knowledge there is added the special facts which are alleged concerning the manner in which the party is organized, we have a case in which it is clear that a convention which was not held under the sanction of the call of such committee was not entitled to have its nominees placed before the voters as constituting the Republican ticket. We need not seek to determine whether the decision of the state committee as to who constitute the local authorities is sufficiently potent in any case to place a claim of regularity on the plane of legal right. What we do decide is that a call for a local convention which is issued by the county central committee, which has been selected and organized pursuant to the call of the state central committee, and is acting pursuant to

State, *ex rel.*, *v.* Board, etc.—167 Ind. 276.

its rules, is the "call of the regularly constituted party authorities."

As to the mass convention, we have seen that it is charged that it was called by persons claiming to be officers of the republican county central committee, but who were not such in fact, and that it was held in conflict with the rules of the state committee. Such nominations are to be regarded as independent nominations. As was said in *Fernbacher* v. *Roosevelt* (1895), 90 Hun 441, 450, 35 N. Y. Supp. 898: "They do not come under the head of the regular party nomination whose convention has chosen the device under which the nominations of that convention are to be presented to the people." The nominees of such a convention, no matter what may be the numbers or supposed grievances of the persons participating in the movement, have no just claim under the statute to have their names placed under the party title and emblem. The statute makes the test of right to party representation the fact that the convention presenting the list of names was held at the time and place designated in the call of the regularly constituted party authorities. The question as to who constitutes such authorities is one which ordinarily can readily be determined under the rules of law. Those who see fit to separate themselves from the regular party organization, cannot claim the privileges which attach to it. A court is not the forum for the determination of questions of a political character, but, as between a dissenting local organization and the representatives of the general body in the locality, the courts, recognizing the fact that those who thus separate themselves are dissenters, deny to them the rights which belong to the regular membership. It is with a party as with a church, the courts will not attempt to settle those questions of right and duty arising in the organization which are so complex that individual opinion must for each man be the final arbiter, but, as respects rights of property,

or whatever is so analogous thereto as to be cognizable by the courts, the rule is, even in the case of an adhering minority, that it is those who adhere and submit themselves to the regular order of the general organization, and not the seceding majority, who are to be recognized as the representatives of the general organization in the locality. *Smith* v. *Pedigo* (1896), 145 Ind. 361, 19 L. R. A. 433, 32 L. R. A. 838. It is stated by a leading author that, "a candidate nominated by electors is not the nominee of a political party, but of the individual electors nominating him, even though all of the electors signing the nominating paper be members of the same political party. Such electors cannot, by choosing the name of a political party authorized to make nominations by convention, make such nominee the nominee of such party." McCrary, Elections (4th ed.), §702.

Assuming the truth of the facts alleged by relator, it is clear that a convention which was held at the time and place designated in the call of the central committee, of which relator is the chairman, was the convention whose nominees should be recognized, upon the filing of a proper certificate as required by law, as the candidates whose names should go upon the ballot as constituting the Republican ticket of nominees for the various offices to which they have been nominated, and that, upon these facts appearing, they should appear in the place on said ballot designated for the Republican ticket, and under the name and emblem of the party.

Thus far we have written upon the merits; and, without being at the pains to state the objections which counsel for appellees urge to the petition and writ, we may state that, having carefully considered such objections, we regard them as unavailing.

There is a defect in said pleadings, however, which must work an affirmance, although it has not been pointed out,

and that is that it is not alleged that the certificate of nomination of the candidates nominated by the convention held upon the call of relator designated the title of the party and the figure or device by which its candidates were to be designated upon the ballots, pursuant to §6215 Burns 1901, Acts 1889, p. 157, §18. In the opinion of the writer, the pleadings were also defective, in that they did not show that said convention was held at the place designated in the call of said party authorities. But whether this proposition is valid or not, the former cannot be escaped, for it is certainly incumbent upon the relator to bring himself within the statute; that is, to show that the facts require that the defendants should do what he demands of them. As was said in *Matter of Madden* (1895), 148 N. Y. 136, 140, 42 N. E. 534: "The right to a column depends upon a nomination's having been made and certified."

As was said by Woods, J., in *Martin* v. *Martin* (1881), 74 Ind. 207, 210, wherein a cause was affirmed on grounds which were not stated or suggested in the briefs: "The counsel have greatly mistaken both the practice and the duty of this court. The issue tendered for our decision by the appellant in every case of appeal is, that 'there is manifest error in the record,' in some specified particular or particulars. The appellee joins issue and says there is no error. The trial is by the record, not by the argument of counsel, and the appellant has no right to prevail, and we should be derelict in duty if we permitted him to prevail, unless the error is made manifest. No matter what error the court below may have committed, it is not manifest in the record, unless saved in the lower court and presented in this court, in accordance with the rules of practice. These rules of practice are the law of the land, their reasonableness is justified by experience, and, unless ready to abrogate, we have no right to disregard them. We never

go beyond the brief of the appellant to search the record in quest of errors which have not been pointed out in the brief; but the appellee, without filing any brief at all, is entitled to the benefit of everything in the record which may prevent a reversal of the judgment upon the errors assigned; and, because the counsel on both sides may discuss some question with very great learning and ability, as was done in this case, we are not therefore permitted to shut our eyes against the fact, which we cannot otherwise help seeing, that the question is not in the record. The silence of the appellee on any point is not equal to an agreement to waive the point; the burden is on the appellant to show the error which he has assigned." In Powell, App. Proc., p. 126, it is said: "Hence it is to be seen that the appellate court, in reviewing the record upon the question of error, will examine the whole record, and if, in so doing, they find in other parts of the record what will justify or neutralize the error assigned and pointed out, the court will not reverse the judgment." See, to the same effect, *Jones* v. *Castor* (1884), 96 Ind. 307; *Wilson* v. *State* (1901), 156 Ind. 631; *Irvin* v. *Rushville, etc., Tel. Co.* (1903), 161 Ind. 524. As was said in *Travelers Ins. Co.* v. *Prairie School Tp.* (1898), 151 Ind. 36: "We may not ignore what we do see that will prevent a reversal of the judgment." In Elliott, App. Proc., §186, the authors said: "The courts have again and again adjudged that appeals are heard upon the record and by the record determined." See, also, *Big Creek Stone Co.* v. *Seward* (1896), 144 Ind. 205; *Scott* v. *City of Laporte* (1904), 162 Ind. 34, 51. To reverse a case because of the sustaining of a demurrer to the complaint must necessarily settle as the law of the case the right of the appellant to recover upon proof of the state of facts alleged in the complaint. To do this on the ground that the appellees, who are evidently striving in every way to uphold the judgment, have failed to make the particular point would

be a perversion of justice. As was said in *Big Creek Stone Co.* v. *Seward, supra:* "If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court."

Before passing on the question which counsel for the parties evidently considered the fundamental question in the case, we deliberated long upon the question as to whether it was our duty to do this, and we have reached the conclusion that it is. Public considerations alone gave the relator the right to wage the question which he seeks to present. The spectacle of a large body of voters being led by what, in practical effect, is a false pretense, to give their suffrages to candidates who are without the sanction of the party they claim to represent, is abhorrent. The question is *publici juris* in the highest degree. It was said by the supreme court of Wisconsin, where a question of representation on the state ballot was presented: "The public rights involved are important in the highest degree. No case has arisen in recent years that more closely concerns all the people than this one. Nothing short of a decision by the highest authority in our judicial system would be at all satisfactory or adequate to meet the situation." *State, ex rel.*, v. *Houser,* 122 Wis. 534, 554, 100 N. W. 964. Recognizing the public interests which are bound up in the question, that the election is at hand, and assuming that appellees, in view of their oath of office and the penalties prescribed for a wilful violation of the election laws, will regard it as incumbent upon them to follow the determination of the State's highest judicial tribunal, we have conceived that we have not gone further than we are warranted in passing upon the merits, and that, in view of the manner in which an affirmance has been brought about, we are not open to the criticism of incorporating *obiter* into our decision in de-

ciding such question. Appellees may claim an affirmance on a ground which they have not suggested, but, having joined with their adversary in invoking our judgment on the main point, they are in no position to complain that the court, in view of the public character of the controversy, has not been silent on the essential question involved. It is the order of the court that this opinion be certified to the court below forthwith.

Judgment affirmed. All concur, except Montgomery, J., who votes for a reversal and files a separate opinion.

## DISSENTING OPINION.

MONTGOMERY, J.—The manifest theory and purpose of the relator's petition is to present to the court for settlement the conflicting claims of two lists of county candidates to the right to have their names printed in the second column of the official ballots, under the title of the Republican party and the emblem of an eagle. No suggestion appears to have been made in the court below that the nominating convention convoked by relator was not shown to have been held at the place designated in the call therefor, nor is anything disclosed in this controversy making the place of holding such convention a matter of importance. No such question is raised or discussed in the briefs of counsel upon appeal. The determination of the controversy presented and urged turns wholly upon the question as to which of the rival lists of candidates shall be recognized as the genuine Republican ticket. All other questions are subsidiary to this, and the formal defects in the petition pointed out in the majority opinion are such as could and doubtless would have been cured by amendment, upon suggestion of their existence, and not having been presented or insisted upon by counsel upon appeal, this court is warranted in considering only the alleged defects passed upon by the lower court, and treating all others as waived. It is not the imperative duty of the members of this court to

become attorneys for appellees and to scan records for grounds upon which to sustain the decision of the court below, which grounds as rational men they know to a moral certainty did not affect the ruling in question, but which as judges they assume might have done so. It is averred that the relator was chosen county chairman in strict conformity to the governing rules and under the supervision of the Republican state organization, and that ever since his election as such chairman he has been recognized by the Republican state and district committees as chairman of the Republican county central committee of Marshall county.

This averment was, perhaps, essential to the jurisdiction of the court, and is decisive of the question under consideration. The writer of the principal opinion attempts to determine the question by tests which are appropriate in controversies involving property rights, but which are wholly inadequate to the solution of a purely political matter. The question involved is one essentially political and not judicial in its character. It has been generally held that such questions will be relegated to the voters for settlement, and the courts will not .attempt to investigate the government, usages or doctrines of political parties, and to exclude from the official ballots the names of candidates placed in nomination, on the ground that they are not proper representatives of the political doctrines or party government of the party to which they profess allegiance, but such questions are to be settled primarily by the party tribunals. *Stephenson* v. *Board, etc.* (1898), 118 Mich. 396, 76 N. W. 914, 74 Am. St. 402, 42 L. R. A. 214, and cases cited. This recognition by the highest tribunals of the party involved gives regularity and validity to the acts of the relator as such chairman, from a partisan standpoint, and is controlling upon the courts. *Breidenthal* v. *Edwards* (1896), 57 Kan. 332, 46 Pac. 469, 34 L. R. A. 146; *Moody* v. *Trimble* (1900), 109 Ky. 139, 58 S. W. 504, 50

American Express Co. *v.* Southern Ind. Express Co.—167 Ind. 292.

L. R. A. 810; *Phillips* v. *Gallagher* (1898), 73 Minn. 528, 76 N. W. 285, 42 L. R. A. 222; *In re Fairchild* (1897), 151 N. Y. 359, 45 N. E. 943; *State, ex rel.,* v. *Houser* (1904), 122 Wis. 534, 100 N. W. 964.

No controversy having been disclosed over the place of holding the nominating convention, that matter is immaterial in the determination of the question presented. If in point of fact the nominations are not certified in writing, as required by law, they are not entitled to go upon the ballots at all.

The genuine list, when properly certified, must be recognized and given its proper place upon the ballots, while the pretenders must be assigned a different column, name, and device.

It follows that the list of candidates nominated at the convention convoked by the relator on June 2, 1906, is the genuine list of Republican candidates, and as such is entitled to be placed in the second column under the party name and emblem on the official ballots, and this right having been denied them as alleged, upon the sole ground of a lack of party regularity and genuineness, the petition is sufficient to afford the relief sought. I therefore dissent from the conclusions reached by a majority of the court, and vote for a reversal of the judgment.