Breedlove *et al. v.* Bundy.

No. 10,745.

BREEDLOVE ET AL. *v.* BUNDY.

FRAUD.—*Conspiracy.*—Where several conspire to defraud another for the benefit of one, all are liable in damages for the fraud.

CONTINUANCE.—*Absent Witness.*—An application for a continuance by a party who has previously obtained a continuance may, in the discretion of the court, be strictly scrutinized, and in the absence of manifest abuse, a refusal of the continuance will not be available error.

PRACTICE. —*Evidence after Argument.*—It is in the discretion of the court, for the furtherance of justice, to permit the introduction of omitted evidence after the close of the argument.

SAME.—*Recalling Jury for Instructions.*—The court may, after the retirement of the jury, recall it and give further proper instructions.

EVIDENCE.—*Insanity.— Witness.*—The record of justices, made in 1872, finding a person to be insane and a proper person to be admitted to the insane hospital for curable insane, is not admissible evidence as tending to prove that the same person, offered as a witness, was insane in 1881.

From the Superior Court of Marion County.

*T. E. Johnson* and *I. Klingensmith,* for appellants.

*W. Wallace, L. Wallace, N. Morris* and *L. Newberger,* for appellee.

FRANKLIN, C.—The error complained of in this court is that the court in general term erred in affirming the judgment of the special term.

The errors assigned in the general term were:

1st. Overruling the separate demurrer of appellant Breedlove to the complaint.

2d. Overruling the separate demurrer of appellant McClellan to the complaint.

3d. Overruling the motion of Breedlove and McClellan for a new trial.

The sufficiency of the complaint is first presented, which reads substantially as follows: That appellants, Breedlove and McClellan, together with their co-defendants, Gossett and Gause, on the 1st day of May, 1879, conspired and confederated together to cheat, swindle and defraud the plaintiff of

a certain stock of goods owned and kept by him in a grocery store in the city of Indianapolis in said county, of the value of $1,000; "that, in pursuance of said conspiracy and confederation, said Breedlove and McClellan came together on or about said day to this plaintiff and proposed selling the said stock and good-will for the said plaintiff, and informed him that the said defendant Gossett was desirous of purchasing the same, and had certain notes and mortgage, executed by the defendant Gause, which said Gossett would trade and exchange for the said stock and good-will; and said Breedlove then and there said and represented to the plaintiff that said notes, aggregating in amount the sum of $675, were part of the consideration for certain real estate in the town of Plainfield, in Hendricks county, and State of Indiana, and were secured by mortgage on such real estate, and that said real estate was very valuable and was worth $4,000; that said McClellan corroborated and assented to all the foregoing representations; that the same were made for the purpose and with the intent of inducing the plaintiff to make and enter into the bargain and trade hereinafter set forth; that the said Breedlove and this plaintiff were members of the Masonic Order, and said plaintiff, on account of such membership, imposed trust and confidence in the said Breedlove, which fact the said Breedlove well knew; that this plaintiff then said that if a satisfactory arrangement could be made, he, the said plaintiff, would be willing to sell out said store and business for $700 cash, as he was desirous of quitting said business and was in need of the money; that afterwards, to wit, on the —— day of May, 1879, said Gossett came to the said place of business of this plaintiff and represented himself as ready and willing to carry out and make the said trade proposed by said Breedlove and McClellan as aforesaid, and, in pursuance of the aforesaid conspiracy and confederation, said and represented to the said plaintiff that the defendant Gause had purchased the interest of his wife, Phœbe A. Gossett, in certain real estate (de-

·scribing it), and that said Gause owned all but one-seventh of said real estate, and that said Gause had paid ·for said interest of said Phœbe A. Gossett, $975, $300 in cash and the remainder in five notes, all dated March 27th, 1879 (describing the notes), and which notes were secured by a first mortgage upon all the real estate aforesaid, and that Gause had money in Harrisons' Bank 'in the city of Indianapolis, and had proposed tó discount said notes for $600, and that said real estate was worth more than $2,000; that afterwards, to wit, on' the 8th day of May, 1879, said defendants Gossett and Gause came together to the plaintiff, and, in pursuance of the conspiracy and confederation aforesaid, the said Gause confirmed the said representations and statements of said Gos-.sett, and said that said notes were well secured and worth their face; that all the foregoing representations and statements were and are false and fraudulent, and were made in pursuance to the conspiracy aforesaid, and for the purpose of fraudulently inducing this plaintiff to bargain and sell said stock of goods for said notes; and that the said defendants did each and all impose upon the trust and confidence of this plaintiff in the said Breedlove for the reasons aforesaid, to prevent this plain- ·tiff from investigating the said property; and that said Gause did acknowledge said indebtedness, and express a willingness to pay the same in pursuance to said conspiracy, and for the purpose of deceiving this plaintiff, and prevent him from investigating said real estate; that on account of the said representations, and induced thereto by them, this plaintiff did ' bargain and sell the said stock of goods and the said goodwill of said establishment to said Gossett, and did pay to him, the said Gossett, the sum of $25 in cash, and the said notes and mortgage, and did deliver possession to said Gossett; * * * that said plaintiff relied entirely upon said representations; that said mortgage was not a first lien upon the real estate aforesaid and said real estate is worthless, and enough to pay the costs of foreclosing said mortgage can not be real-

ized therefrom; and that said Gause never had any title whatever to. said real estate, and now refuses to pay the notes aforesaid." Wherefore, etc.

Breedlove and McClellan have alone appealed and assigned errors, and they insist that the complaint, as to them, is insufficient. The complaint sufficiently charges a conspiracy between all the defendants.

The law is well settled that if there was a conspiracy between them, each of them engaged in the conspiracy is liable for the acts and declarations of the others so engaged, done and made in pursuance of the conspiracy. *Boaz* v. *Tate,* 43 Ind. 60.

The facts alleged in the complaint sufficiently show that a. fraud was committed upon the plaintiff, and as it is alleged that these appellants were engaged in the conspiracy by which the fraud was committed, they are to be held responsible alike with those by whom it was actually committed. There is no error in overruling their separate demurrers to the complaint.

The first reason in the motion for a new trial, insisted upon by appellants, is the overruling of their motion for a continuance. This was an application for a second continuance of the cause, after the appellants had procured its continuance upon their affidavit at the previous term. We do not think that sufficient diligence is shown to have been used to procure the testimony of the absent witness, or sufficient certainty that the evidence of the absent witness, if the cause was continued, would be procured by the next term. The witness appeared to be transitory, going from one point to. another in the State of Pennsylvania, without any settled home. In such cases a reasonable discretion must be left to the trial court,. and in this case we do not see that there was an abuse of such discretion by the overruling of the motion for a continuance. *Shattuck* v. *Myers,* 13 Ind. 46. There is no available error in this ruling.

The next reason for a new trial insisted upon by appellants, is, that after the evidence had closed, and the argument of

counsel had been completed, the court, over the objection of appellants, permitted appellee to read in evidence the notes and mortgage. This action was not based upon the notes and mortgage, but was for damages for the fraud alleged to have been practiced upon appellee. While appellee had no right to demand the further hearing of evidence at that stage of the trial, yet the court had the discretionary right, in the furtherance of justice, to supply a technical omission by admitting the evidence, and its admission under such circumstances can not constitute available error.

Upon the seventh and eighth reasons for a new trial no error has been pointed out, and we do not feel required to search for any.

The ninth and tenth reasons, based upon instructions to the jury, question the action of the court in calling back the jury after they had retired for deliberation upon their verdict, and giving to them further instructions. The additional instructions given to the jury when called back are as follows: "For example, suppose you find for the plaintiff, and that the notes and mortgage were totally worthless, then your verdict should be for an amount equal to the principal and interest due on said notes at the date of their transfer to the plaintiff, to which you will add interest at the rate of six per cent. per annum from the date of the transfer to January 29th, 1881." Again: "If you find for plaintiff, and that the notes and mortgage were worth, say $100, but no more, that is, that said amount, but no more, could have been collected thereon at the date of such transfer, then your verdict should be for an amount equal to the principal and interest due on said notes at the date of such transfer, less $100, and to the sum representing this difference you will add interest at the rate of six per cent."

The jury had not been instructed upon the amount of the damages to be recovered, if any, and there was no error in the court's calling them back and instructing them upon that subject. But it is further objected by appellants that the

additional instruction substantially told the jury to find for the plaintiff.

We do not think the language used is susceptible of that construction. The court merely told the jury, if they found for the plaintiff, how to arrive at the amount of damages they should assess in his favor. But the questions whether they should find for the plaintiff, or what value they should attach to the notes at the time they were transferred, were left entirely to the jury. There was no error in this additional instruction.

The thirteenth and last reason for a new trial is also insisted upon by appellants; all the others, not decided, are waived by appellants not discussing them in their brief.

This last reason is for the court's refusal to admit in evidence a certain record contained in the " insane record " on file in the clerk's office in Marion county, Indiana.

When appellee was introduced as a witness in his own behalf, appellants' counsel objected, upon the alleged ground that appellee was an insane person. They made no offer to prove his then insanity, but offered to introduce a record made nine years before in 1872, by two justices of the peace, certifying that appellant was then insane and had been so for two weeks, and that he was a suitable person to be admitted into the hospital for the curable insane, to be treated for that disease. The record shows that he was then so committed. But it also substantially shows that his then insanity was but temporary, and that he was supposed to be curable.

After the lapse of so long a time, when he was presented upon the witness stand, we think the reasonable presumption would be, there being no proof to the contrary, that he was then sane, that he had been cured and discharged from the hospital; and we think this presumption outweighs any legal presumption, if any exists, of any permanent or continuous insanity inferable from the proceedings contained in said record.

This is not like a case where the lunatic has been regularly adjudged insane by an inquisition and placed under guardianship,

after which the presumption of insanity continues until he has been regularly adjudged sane and discharged from his guardianship. We do not think such a presumption as that can apply to this case. There being no evidence as to the condition of his mind at the time of the trial, from his appearance and demeanor the court may have deemed him competent to testify, and there was no error in excluding the record. *Hardenbrook* v. *Sherwood,* 72 Ind. 403. There is no available error in this record.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and it is in all things affirmed, with costs.

Filed March 6, 1884.

## ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The complaint sets forth that the defendants conspired together to cheat the plaintiff by the means thereinafter set forth. It then states that Breedlove and McClellan came together to the plaintiff, and Breedlove made certain representations which McClellan corroborated, and on which the plaintiff relied, because he had confidence in Breedlove as a brother Mason ; that Gossett, a few days afterwards, made like representations as to certain notes proposed to be given for plaintiff's stock of groceries and the good-will of his trade ; that a day or two thereafter Gossett and Gause came together to the plaintiff and made similar representations as to said notes and the land for which they were given, and as to a mortgage by which they were alleged to be secured ; that plaintiff, in consequence of his confidence in Breedlove as a Mason, made no examination as to said real estate, but relying on said representations, sold said stock and good-will to Gossett, took therefor said notes and mortgage, paid Gossett $25 to boot, and delivered to him the goods ; that all of said representations were false and fraudulent, and were made in pursuance of said conspiracy and for the purpose of inducing the plaintiff to sell said goods for said notes.

and mortgage. Wherefore, etc. Several of the representations were of material matters of fact.

The complaint stated a good cause of action against all of the defendants, and the separate demurrers of the defendants Breedlove and McClellan were properly overruled.

In the complaint the plaintiff, in averring the completion of the sale, has omitted a word which ought to be supplied; he says he sold the stock of goods and the good-will to Gossett, "and did pay him the sum of $25 in cash, and the said notes and mortgage, and delivered to him the possession of the goods," etc.

Here the word "received" was omitted before the words "said notes and mortgage." Supplying that word, the statement will be that the plaintiff sold the goods, etc., to Gossett, "and did pay him the sum of $25 in cash, and received the said notes and mortgage, and delivered to him the possession of the goods," etc. This defect in the pleading might have been amended by the court below, and must be deemed to be amended in this court. R. S. 1881, section 658.

As to the motion for a new trial, we think it needless to add anything to the principal opinion.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.

Filed June 21, 1884.