## SANCHEZ v. STATE OF INDIANA.
[No. 25,155.   Filed June 8, 1927.]

1. CRIMINAL LAW.—*Rule as to granting new trial for newly-discovered evidence.*—To warrant the granting of a new trial for newly-discovered evidence (cl. 8, §2325 Burns 1926), it must appear that the evidence has been discovered since the trial, that it could not have been discovered before the trial, that it is material and would likely change the result and that it is not merely cumulative or impeaching.   p. 240.

2. CRIMINAL LAW.—*Cumulative or impeaching newly-discovered evidence may sometimes be considered.*—The fact that newly-discovered evidence is cumulative or impeaching will not prevent its consideration on some point as to which it is not cumulative or impeaching.   p. 240.

3. CRIMINAL LAW.—*Evidence of a different kind is not cumulative.*—Newly-discovered evidence which tends to establish the same point as other evidence but is different in kind is not cumulative.   p. 240.

4. HOMICIDE.—*Newly-discovered evidence of conduct of deceased and companions in pool-room relative to defendant just before killing held not cumulative or impeaching.*—In a motion for a new trial because of newly-discovered evidence by one convicted of murder by shooting, new evidence to the effect that, immediately before the shooting, affiant saw the defendant in a pool-room attempting to get change for paper money which he held in his hand, that he saw a group of men, including the deceased, talking together in a low tone of voice and pointing at defendant, that they went out of the pool-room ahead of him and attempted to surround him and engage him in a quarrel, and that, before the shooting, he heard a scuffle and a blow, was not cumulative or impeaching.   p. 240.

5. HOMICIDE.—*Newly-discovered evidence as to defendant's reputation for peace and quietude and general moral character held material in motion for new trial by one convicted of murder by shooting.*—In a motion for a new trial because of newly-discovered evidence by one convicted of murder by shooting, proposed testimony of newly-discovered witnesses as to the defendant's general moral character and his reputation for peace and quietude would be material when taken in connection with defendant's testimony as to what happened when the deceased was killed.   p. 241.

6. HOMICIDE.—Newly-discovered evidence held to be such as would probably produce a different result on another trial of a charge of murder by shooting.   p. 241.

7. CRIMINAL LAW.—*Diligence in discovering evidence before trial, how determined.*—In an application for a new trial on the ground of newly-discovered evidence, in determining whether due diligence was used to discover such evidence before trial, each case must be governed by the circumstances surrounding it.   p. 241.

8. CRIMINAL LAW.—*Accused cannot be charged with lack of diligence in discovering evidence when he had no knowledge of its existence.*—One seeking a new trial for newly-discovered evidence cannot be accused of lack of diligence to discover it before trial when he possessed no means of knowing that the evidence subsequently discovered was in existence.   p. 241.

9. HOMICIDE.—*Refusal of new trial for newly-discovered evidence held reversible error.*—Where a defendant was convicted of murder in the first degree and sentenced to death, the refusal of a new trial because of newly-discovered evidence which would probably change the result was reversible error where the defendant was a foreigner eighteen years of age, without knowledge of his legal rights, and relied on an incompetent attorney to secure evidence to establish his defense, which the attorney failed to secure, and defendant was confined in jail from the time the homicide was committed.   p. 241.

10. CRIMINAL LAW.—The granting of a new trial for newly-discovered evidence is in the legal discretion of the court.   p. 241.

11. CRIMINAL LAW.—*Verified statements in motion for new trial must be accepted as correct when not contradicted nor discredited.*—Verified statements in a motion for a new trial, though made on information and belief, must be accepted as correct when neither contradicted nor discredited, especially if corroborated.   p. 242.

12. CRIMINAL LAW.—*Poor defense will not alone justify reversal of conviction.*—The fact that an accused was poorly defended will not alone justify the reversal of a judgment of conviction where it is reasonably supported by satisfactory evidence, but such fact may be considered when it is obvious that his rights were not properly protected during the trial.   p. 245..

13. CRIMINAL LAW.—*Ignorant foreign boy accused of murder in first degree, defended by incompetent attorney, who failed to have witnesses in defendant's behalf, held not to have had fair and impartial trial as guaranteed by Constitution.*—Where the defendant, an eighteen year old Mexican boy, was charged with murder in the first degree, and, being ignorant of the English language and of his legal rights, employed an incompetent attorney to defend him, who had tendered his services and who was without experience in the trial of criminal cases and was not informed of the rules of evidence and that witnesses could be compelled to attend trial and testify without the prepayment of their fees, for which reason, he failed to make proper investigation as to evidence favorable to accused and to have his witnesses in court for trial, and who made no objection to an interpreter who was a friend and companion of the deceased, *held* that he had not had a fair and impartial trial as guaranteed by the Constitution, Art. 1, §13 (§65 Burns 1926).   p. 246.

From Porter Circuit Court; *H. H. Loring,* Judge.

Vito Sanchez was convicted of murder in the first degree and sentenced to death, from which he appeals. *Reversed.*

*Russel B. Harrison, Daniel E. Kelly* and *Edward J. Ryan,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

GEMMILL, J.—The appellant was indicted by the grand jury of Lake county for murder in the first degree.   The indictment charged that he unlawfully, feloniously, purposely and with premeditated malice killed and murdered one Daniel Grigayen, on March 8, 1925.   The cause was sent on change of venue from the criminal court of Lake county to the Porter Circuit Court.   In that court, a jury found him guilty as charged and fixed his punishment at death.   The court entered judgment accordingly.   The attorneys who now represent the appellant did not appear for him at the trial and had no connection with the case until after the rendition of the judgment.   His present attorneys filed a motion for a new trial for him.   Same was overruled by the court and the ruling thereon has been assigned as error.   In the motion and supplemental motion for a new trial, more than seventy causes for same are stated.

The appellant is a citizen of the Republic of Mexico and was eighteen years old when the homicide occurred. Witnesses for the state testified as follows:   The appellant went into a pool room at No. 1418 Washington street in the city of Gary, on March 8, 1925, about 7 o'clock in the evening.   He went to the counter and asked for change, presenting a twenty-five or fifty cent piece.   He did not secure any change.   Daniel Grigayen, Daniel Vega and John Churis, all Spaniards, were in the pool room and only a short distance from him when he asked for change.   A few minutes later, he started to-

ward the door. Grigayen preceded him and Vega and Churis followed. On the outside, no words were spoken. Appellant began to shoot, shot five or six times, and killed Grigayen, who lived in Chicago and who was in Gary to attend a dance at the Spanish lodge room. After the shooting, the appellant ran, but was captured a short distance away by Vega and Churis. Officers said that, when they searched him, they did not find any paper money.

The appellant was a witness in his own behalf and testified: That he was a laborer, working in Gary. He went into the pool room to get change for a twenty-dollar bill. He did not get change for it and then asked change for a half-dollar, which he did not get. He was in the pool room about five minutes. As he left, three men were standing on the outside at the side of the doorway. As he stepped out of the door, a man struck him on the head, knocked him down, went through his pockets and took the twenty dollars. When captured there was a bruised place on his head. At the trial, he exhibited a scar on his head to the jury. His reason for having the revolver in his pocket was that he was going to sell it to a party whom he was to meet at another pool room near there. He emptied his revolver, but did not know whether he shot anybody. One of the men shot at him, and his coat had a bullet hole in the sleeve and two bullet holes in the side. His coat showed bullet holes.

It is contended that appellant was entitled to a new trial, on account of newly-discovered evidence. The affidavit of Jesus Cavisas was made part of the motion for a new trial. Upon oath, he made the following statements: That he boarded in East Chicago, Indiana, was twenty-two years old, could speak the Mexican and Spanish languages, but was not familiar with the American language. That he was no relation and was not

acquainted with Vito Sanchez. On the evening of March 8, 1925, he was in the city of Gary, and that while in a pool room at 1418 Washington street in that city, playing pool, Vito Sanchez entered the pool room. He saw Sanchez approach the counter, saw him engage in conversation with the clerk, heard some talk about changing money, which was paper money, which appellant had in his hand. That while so engaged, three men were within five feet of Sanchez. They could have heard the conversation and could have seen the money. A short time after this, he saw the three men standing together and pointing at Sanchez. They spoke in low tones, but he heard one of them say something about Sanchez in the nature of a threat or curse. As Sanchez moved toward the door leading to the street, one of the men advanced toward the door and passed out of the room to the street. The other two men moved toward the door and stood to one side. It appeared that they were attempting to surround Sanchez or engage him in a quarrel. Sanchez moved to and passed through the door to the street, and the two men standing on the side passed out immediately after him or to one side of him. While passing out, one of the men said something in the Spanish language about Sanchez. They passed out of the door immediately behind Sanchez, and a short time thereafter he heard a scuffle, heard a blow and heard four or five shots in rapid succession. After the occurrence on the outside, there was great confusion and he left and went immediately home, running part of the way, as he was frightened. He was never subpoenaed as a witness, and had no knowledge of the trial of Sanchez at Valparaiso. He never told what he knew about this matter until after the trial and then to one of the members of the Mexican Society.

The affidavit of Jesus Rios showed that he was residing in Gary, was well acquainted with Vito Sanchez

on March 8, 1925, and was to meet him at a pool room at 1418 or 1421 Washington street, in Gary, on that evening, to buy a gun of him, concerning the purchase of which he had formerly talked to him. Also Vito Sanchez had good character for peace and quietude and good general moral character, and that his reputation among the Mexicans with whom he associated was good. That he was not subpoenaed to testify at the trial.

The affidavits of Carmen Nila and Dionisio Nila stated that they knew and would testify that Vito Sanchez's general character for peace and quietude, his general moral character, and his reputation among the Mexicans with whom he associated, were good.

The eighth statutory cause for which the court can grant a new trial to the defendant in a criminal cause is:

"Newly-discovered evidence, material for the de-1-4. fendant, which he could not, with reasonable diligence, have discovered and produced at the trial."
§2325 Burns 1926. The inquiry as to what is newly-discovered evidence involves the two points—"materiality" and "diligence." In order to warrant the granting of a new trial on the ground of newly-discovered evidence, it must appear: (1) That the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative or impeaching. 20 R. C. L. 290, §70. Newly-discovered evidence will not be considered, in so far as it is cumulative or impeaching. But the fact that it is cumulative or impeaching will not prevent it from being considered if it is also material on some point neither cumulative nor impeaching. Hogate, Pleading and Practice §690. New evidence which goes to the same point but is different in kind is not merely cumulative. *Houston* v.

*Bruner* (1872), 39 Ind. 376; *Kochel* v. *Bartlett* (1882), 88 Ind. 237; 1 Greenleaf, Evidence §2. Part of the newly-discovered evidence of Jesus Cavisas is merely cumulative and is impeaching; but some of it which is material cannot be put in either of the named classes. The following statements in the affidavit of Jesus Cavisas on another trial would be material evidence, and would not be merely cumulative or impeaching: That he saw the three men (Grigayen, Vega and Churis) pointing at Sanchez, when he was attempting to get his money changed; that they spoke in low tones, that one said something about Sanchez in the nature of a curse, that as they went out of the door, they were attempting to surround Sanchez or engage him in a quarrel, and as they passed out, one said something about Sanchez in the Spanish language; and that before the shooting he heard a scuffle and a blow.

Evidence as to appellant's general moral character and his good reputation for peace and quietude, about which three witnesses will testify on another trial, is

5. material, when taken in connection with his testimony as to what happened when Grigayen was killed. In *People* v. *Lane* (1883), 31 Hun. (N. Y.) 13, it was held that newly-discovered evidence of general good character was not cumulative when the accused had not offered any proof of good character on his trial, though his character for veracity had been impeached.

The material newly-discovered evidence is such that it is probable it will produce a different result upon another trial. In determining what is due dili-

6-10. gence in the procurement of new evidence, each case must be governed by the circumstances surrounding it. Jesus Cavisas ran away from the scene of the trouble and did not tell what he knew until after the trial. One seeking a new trial for newly-discovered evi-

dence cannot be accused of lack of diligence when he possesses no means of knowing that the evidence subsequently discovered was previously obtainable. *Henderson* v. *Edwards* (1921), 191 Iowa 871, 183 N. W. 583, 16 A. L. R. 1090. The defendant was confined in jail, was only eighteen years old, was a foreigner, had no knowledge of his legal rights, had to rely upon his attorney to secure material, existing evidence, which the attorney, being wholly incompetent, as hereinafter shown, failed to do. In such case, where the defendant has been sentenced to death, a new trial will not be denied for lack of diligence where the newly-discovered evidence will probably change the result. The granting of a new trial upon the ground of newly-discovered evidence is in the legal discretion of the court. In the instant case, it appears that the court's discretion was clearly abused. The motion for a new trial should have been sustained.

Another cause stated in the motion for a new trial is that the defendant was deprived of a fair and impartial trial as guaranteed by the Constitution of the State of Indiana, because of the inexperience and incompetency of the attorney, who appeared for him. Article 1, §13 of the State Constitution, being part of the Bill of Rights, provides: "In all criminal prosecutions, the accused shall have the right to a public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; and to have compulsory process for obtaining witnesses in his favor." §65 Burns 1926. Statements in a motion for a new trial, though made from information and belief must be accepted as correct when neither contradicted nor discredited, but corroborated.

The verified motion for a new trial contained the fol-

lowing statements regarding defendant's attorney: That he was not familiar with the law and rules of court governing admissions of evidence. He was not aware that he could procure witnesses and have forcible process to obtain them in defendant's behalf, but thought that unless he paid the witnesses their fees in advance, they would not be required to attend the trial and testify in behalf of the defendant. He did not notify defendant's brother, living in Gary, Indiana, and the consul at Chicago for the Republic of Mexico, of which country defendant was a citizen, of the date of trial. He did not subpoena any witnesses who would testify in defendant's behalf and did not secure any witnesses to testify to defendant's good character for peace and quietude in the neighborhood where he resided in the county of Lake, in the State of Indiana. The defendant, not being a citizen of the United States and not being familiar with the laws, customs and usages, did not know that said attorney was inexperienced in the practice of law and procedure; and did not know that witnesses whom he desired to testify in his behalf could be obtained by forcible process. Said attorney made no objection to the introduction of much incompetent evidence against the defendant, and incompetent evidence was introduced and permitted to go to the jury without objection, by reason of his inexperience and lack of training. He did not take exceptions to any questions propounded to witnesses, many of which were improper, or to any instructions tendered by the court; and he did not tender any instructions to the court and request that they be given. That said attorney was incompetent and lacked experience to try a case involving the life and liberty of defendant. And the defendant, not being a citizen of this country, had limited knowledge of the English language and was wholly unfamiliar with the laws of the United States and the State of Indiana and did not know

that a lawyer lacking experience and not qualified to conduct a proper and complete defense was permitted to appear in a case involving a defendant's life. When the defendant was in the county jail, said attorney called and tendered his services, and that when said services were so tendered, the defendant assumed that he had training, experience and knowledge of the law; and defendant had no knowledge of his lack of qualifications and did not discover and was not informed of the inexperience and incompetency of said attorney until after the trial of the case and the verdict had been received.

The statements in the motion for a new trial regarding said attorney and his conduct in the trial are not denied; and it is claimed that same are corroborated by the record. As several of the witnesses did not speak the English language, it was necessary to have an interpreter. One cause for a new trial states that there was irregularity in the proceedings of the court, as the interpreter was not disinterested, but was a friend and companion of the decedent. The record shows that defendant's attorney consented to the use of the interpreter, about whom he said in open court: "This man was hired by the friends of the deceased. I do not know that that will make any difference." Objection should have been made to the use of said interpreter. After the defendant testified, his attorney said: "Your Honor, I was to have two other witnesses here and I have been looking until I have about strained my eyes but I do not see them here." It then developed that he had not had them subpoenaed by the sheriff and had not served a subpoena on them himself, but had only requested that they be there. They were not present, and he asked a continuance of the trial until the next day, which the court refused, saying: "The court can't continue unless you subpoena witnesses." The attorney for the defendant did not have any witnesses to testify in his behalf.

This court and other courts have held that the fact that the accused was poorly defended will not justify the reversal of a judgment where it is reasonably supported by satisfactory evidence. We adhere to that rule. In the instant case, the evidence upon which the conviction was based was that of the two companions of the deceased and the proprietor of the pool room. If appellant was robbed of twenty dollars, as he testified, two of these witnesses were parties to that transaction. While it is possible, yet it is not probable, that the appellant went out of the pool room and at once began to shoot at Grigayen, who was a stranger, without a word being said or anything being done and without any cause for doing so. The fact that the defendant had some bullet holes in his coat which could not have been made by bullets from his revolver, gives credence to his testimony.

In *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321, it was said: "And mere perfunctory action by an attorney assuming to represent one accused of crime which falls short of presenting the evidence favorable to him and invoking the rules of law intended to prevent conviction for an offense of which the accused is innocent, or the imposition of a penalty more severe than is deserved, should not be tolerated." The judgment in the Castro case was affirmed, but this court therein also said: "But he (appellant) does not suggest that there was any fact known to him or which he could prove by other witnesses that was not fully presented at his trial, or that there were any other witnesses in his behalf whom his attorney might or should have called to testify, or whose testimony could be obtained if a new trial were granted."

In *People* v. *Schulman* (1921), 299 Ill. 125, 132 N. E 530, 24 A. L. R. 1022, the court said: "The character of the case and the evidence offered by the People were

such that the defendant should have been given every right the law afforded him in establishing his defense. We are not to be understood as holding that he is not guilty, but only that the inconclusive evidence, together with the fact that defendant was not permitted to offer proof, if such proof existed and could have been produced, which was important and material to his defense and to a fair trial, impels us to reverse the judgment in order that he may have an opportunity on a new trial to present in a proper way and have admitted the proof, if it exists, that he did not have the benefit of on his former trial."

In *People* v. *Nitti* (1924), 312 Ill. 73, 143 N. E. 448, the court said: "The fact that the defendants were ignorant, illiterate foreigners, unacquainted with law or court procedure in this or any other country, and unable to speak and understand the English language, requires that we take into consideration the gross incompetency and stupidity of counsel appearing for them." The judgment was reversed.

In the instant case, the attorney who appeared for the defendant was voluntarily employed by him. But it should be taken into consideration that the appellant was only eighteen years old, was a citizen of another country, and, according to the motion for a new trial, "did not understand legal procedure and did not understand the English language." He employed the attorney who tendered his services to him, naturally believing that he had sufficient experience and enough ability to conduct properly his defense. From shortly after the homicide until the trial, the appellant was in jail and depended upon his attorney to make proper investigation as to evidence and to have his witnesses in court for the trial. The total failure in this particular has already been narrated. According to the motion for a new trial, which is not contradicted and

which is corroborated by the record, his rights were not properly protected by his attorney during the trial. Justice·demands that the appellant should not be put to death as the result of his former trial; but that he should be given another trial in which he will have an opportunity to present his evidence and to be represented by competent counsel.

Other claims of prejudicial error are urged; but it is hardly possible they will arise on another trial, so they are not considered.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial. It is further ordered that the clerk of this court make and certify to the warden of the Indiana State Prison an order for the return of the appellant to the custody of the sheriff of Porter county.