MARX *v.* STATE OF INDIANA.

[No. 29,360. Filed March 21, 1957.]

*John William Agnew,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Robert M. O'Mahoney,* Deputy Attorneys General, for appellee.

ARTERBURN, J.—The appellant was convicted of second degree burglary, and sentenced to the Indiana Reformatory for a period of not less than two (2) years nor more than five (5) years.

The appellant raises two main points for consideration on this appeal. The first contention is that he was entitled to a trial separate from his co-defendant ■ for the reason that there was some question as to the sanity of the defendant. The mere fact alone that there may be an issue of insanity raised by the petitioning defendant would not necessarily compel a separate trial. There is no showing or suggestion of any injury or prejudice to the appellant which would result from the trial with his co-defendant. The granting of a motion for a separate trial where the defendants are jointly indicted rests within the sound judicial discretion of the trial court. It is only where there is a plain and arbitrary abuse of such discretion that a denial of separation will be reversed. The appellant fails to point out any abuse of such discretion in this case by the trial court. We therefore find no grounds for declaring any abuse of discretion on the part of the trial court in denying the petition. Acts 1935, ch. 92, §1, p. 286, being §9-1804 Burns' 1956 Replacement; *Neal* v. *State* (1938), 214 Ind. 328, 14 N. E. 2d 590, 15 N. E. 2d 950.

The second contention of the appellant is that the appellant at the time of the commission of the alleged crime, and at the time of the trial, was under a commitment to the Central State Hospital, under an order issued by Judge Lloyd Claycombe of the Marion Circuit Court, as a result of an insanity inquest; that with such commitment outstanding the trial court (Criminal Court of Marion County, Division No. 1) had no jurisdiction to try the appellant for a crime as charged.

The record shows that the attorney for appellant suggested to the court prior to trial, the facts regarding the possibility of the insanity of the appellant. This was done by the submission of a letter presented to the court addressed to appellant's attorney from Dr.

C. L. Williams, Superintendent of the Central State Hospital. This letter stated, among other things, that the appellant had been committed to that hospital by the Marion Circuit Court on November 4, 1953, and after showing improvement, he was released from the hospital in the custody of his mother. It was while released from the hospital the alleged crime was committed. There was no court record introduced showing any formal restoration of sanity.

The trial court (Criminal Court of Marion County Division No. 1) thereupon, pursuant to Acts 1951, ch. 238, §2, p. 682, being §9-1706a Burns' 1956 Replacement, appointed two physicians to examine the defendant, and report upon his sanity. This statute, in part, says:

> "If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense, the trial shall not be delayed or continued on the ground of the alleged insanity of the defendant."

At the preliminary hearing following the testimony of the physicians so appointed, the court found that the defendant had sufficient comprehension to understand the nature of the criminal action against him and the proceedings, and to make his defense. This finding was amply supported by the testimony of the medical experts. Thereafter, the appellant was tried on the pending criminal charge, and found guilty by the court.

It is to be observed that the appellant made no special plea of insanity to the crime charged, as must be done to raise such issue under Acts 1905, ch. 169, §198, p. 584, being §9-1132, and Acts 1913, ch. 298, §1, p. 774, being §9-1701, Burns' 1956 Replacement, and no evidence was introduced on such an issue at the trial proper. It should likewise be pointed out that no ques-

tion is raised on this appeal as to the sufficiency of the evidence. There is no specification in the motion for a new trial on that point, nor on the point that the verdict was contrary to law. The only point urged relative to the insanity question is the lack of jurisdiction of the trial court to try the case. This issue was raised by a motion to dismiss on the ground that the trial court had no jurisdiction by reason of the fact that defendant "was ordered committed as an insane person, to the Central State Hospital on November 4th, 1953"; and the trial court in entertaining the criminal charge against the appellant was permitting "a collateral attack" upon the order of commitment of the Circuit Court.

The state points out that there is no evidence in the record showing the "appellant was ordered committed as an insane person." This may be technically true; however, we prefer to place our decision upon more substantial grounds.

We are concerned here with the power of a court to assume jurisdiction to try a defendant charged with a crime, who at the time was under a commitment to a mental institution as a result of an insanity hearing or inquest other than that resulting from a criminal prosecution. This jurisdictional question appears to be one of first impression in this state; however, there are certain guiding principles which should not be overlooked.

An insanity inquest without a commitment being involved, may be used to determine the necessity for the appointment of a guardian on the showing that the subjected person does not have the ability or capacity to manage his personal affairs and business.

The purpose of the normal proceedings for the commitment of an insane person to a mental hospital is for his treatment, and the protection of society against

his violence. The proceedings are, for the most part, *ex parte* in nature, and may be based upon a voluntary petition in some instances. Acts 1929, ch. 89, §1, p. 288, being §22-1201 et seq., Burns' 1950 Replacement. A defendant may also be ordered committed to the Dr. Norman M. Beatty Memorial Hospital under §9-1706a *supra*, at a preliminary hearing prior to a criminal trial when it is found the defendant is not mentally fit to stand trial at the time. However, even in such a case, the trial court does not lose jurisdiction, but under the statute may reconsider the matter any time.

We are not, however, here concerned with a commitment to the Dr. Norman M. Beatty Memorial Hospital. We do not believe that it is the purpose or intent of the law that a commitment to a mental institution shall be a defense to any criminal prosecution, or deprives a court of jurisdiction to try one so committed for a criminal offense under the circumstances here. Such a rule would create an immunity against prosecution so long as such a commitment is outstanding. We are all aware that there are various types of insanity and mental disorders. Some are curable and some are not. There are also various degrees of such illness. Some of these types and degrees do not meet the legal test of insanity sufficiently to be a defense to a law violation. In other words, medical insanity is not the same as legal insanity as a bar to criminal prosecution. Not every mental aberration or disorder will excuse the commission of a crime. There is criminal responsibility where there is sufficient mentality to fully comprehend the nature and consequences of one's acts coupled with a will power capable of controlling the acts, regardless of other abnormal mental characteristics. An insanity inquest does not adjudicate such an issue. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769 (Cert. Denied

336 U. S. 940, 93 L. Ed. 1098, 69 S. Ct. 744) ; *Foster* v. *State* (1944), 222 Ind. 133, 52 N. E. 2d 358; *Swain* v. *State* (1939), 215 Ind. 259, 18 N. E. 2d 921; Cert. Denied 306 U. S. 660, 59 S. Ct. 791, 83 L. Ed. 1057; 7 Notre Dame L. J. 390; 30 Ind. L. J. 194.

In *Goodwin* v. *The State* (1884), 96 Ind. 550, this court held the finding of insanity at an insanity inquest was not conclusive on the state in a criminal prosecution, and the state may introduce evidence to rebut the finding.

There are possible situations in which a person might be a proper subject for commitment and treatment in a mental institution, and yet have sufficient mental capacity to make a will, transact business, be a witness, and be legally responsible for the commission of a crime, depending upon the degree and nature of the mental disorder. *Emry* v. *Beaver* (1922), 192 Ind. 471, 137 N. E. 55; *Breedlove et al* v. *Bundy* (1884), 96 Ind. 319; *Hicks* v. *State* (1905), 165 Ind. 440, 75 N. E. 641.

Moreover, a commitment for insanity to a mental institution may be outstanding where there has been improvement or complete recovery. A delay or failure to have a decree entered adjudicating a restoration of sanity, should not prevent a court from assuming jurisdiction of a case in which such a person is charged with a crime. Where a crime is charged the proper manner for settling a question of existing mental condition is that provided under Burns' §9-1706a, *supra,* and where that of legal responsibility for criminal acts is involved, by pleading specially insanity as a defense to the crime charged as provided by statute (Burns' §9-1132 and §9-1701, *supra).* The courts have been given jurisdiction to determine these questions in criminal cases.

The Supreme Court of Ohio has held that one sub-

ject to confinement in an insane asylum was not immune from prosecution for his crimes. *State ex rel.* v. *Owen* (1937), 133 Ohio St. 96, 12 N. E. 2d 144, 114 A. L. R. 686.

It is our opinion that the trial court had jurisdiction to try the appellant for the crime charged, although there was at the time of the alleged commission of the crime, and at the time of the trial outstanding a commitment for insanity to Central State Hospital.

Appellant did not enter a plea of insanity as a defense following a report of the physicians appointed by the court. On this appeal appellant was represented by counsel different from that which he retained at the trial. No question has been raised here or suggested by such counsel as to any incompetency of trial counsel in failing to make a defense of insanity at the trial. We have no right to make such an assumption. Suffice it to say, that there are many factors to consider in making a plea of insanity, one of these is that it often opens the door quite widely to all kinds of evidence as to the experience and activities of the defendant. It is not for us to pass judgment upon the appellant or the appellant's trial counsel as to the wisdom of the course he takes to defend himself. These are matters for their determination, not ours.

The judgment is affirmed.

Bobbitt and Landis, JJ., concur. Achor, C. J., concurs with opinion. Emmert, J., dissents with opinion.

## CONCURRING OPINION

ACHOR, C. J.—As stated in the majority opinion, in which I concur, appellant was convicted of burglary. He had been committed to the Central State Hospital for the Insane under §22-1207, Burns' 1950 Replacement. At the time of the offense he had, in the opinion

of the superintendent, sufficiently recovered to be released on furlough. Prior to the trial in this case an inquiry was had under §9-1706a, Burns' 1956 Replacement, as a result of which it was determined that appellant had comprehension sufficient to understand the proceedings and make his defense. Nevertheless, in the absence of a complete discharge, the presumption remained that the psychosis for which he was committed continued to exist. *State ex rel. Quear* v. *Madison Circuit Court* (1951), 229 Ind. 503, 506, 99 N. E. 2d 254.

It is asserted that, under the facts presented, it was the duty of appellant's counsel to enter a special plea of insanity under §9-1701, Burns' 1956 Replacement. This assertion is grounded upon the rule that it is the duty of counsel, ". . . Having undertaken such defense, . . . to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." Canon 5, Canons of Professional Ethics. See also: Canon 15, Canons of Professional Ethics.

However, it occurs to me that this rule—like every other rule—must be applied with reason. The rule does not require that an attorney assert a defense permitted by law which would, in his judgment, operate to the detriment of his client.

The facts presented indicate that appellant's attorney may have concluded that the *presumption* that his client remained insane could not be maintained when subjected to the light of fact. Furthermore, he was confronted by the fact that if he caused his client to plead insanity he would thereby open the gate to an almost unlimited exploration into the life of his client. The facts thus exposed might militate strongly against the accused.

Therefore, it occurs to me that we cannot, under the facts presented, say as a matter of law that appellant

was not afforded his constitutional right to competent counsel under §13, Article 1 of our Bill of Rights, or that he was denied due process of law under the 14th Amendment to the Constitution of the United States.

## DISSENTING OPINION

EMMERT, J.—I concur in the holding of the majority opinion that the Criminal Court of Marion County had jurisdiction to try the appellant, and that there was no isue of criminal insanity to be tried under the pleadings.

But it is more than obvious there should have been a special plea of insanity filed by appellant's counsel under §9-1701, Burns' 1956 Replacement, and for this reason he was denied representation by counsel under Section 13 of our Bill of Rights, as well as due process under the Fourteenth Amendment.

The issue under §9-1706a, Burns' 1956 Replacement, only goes to the capacity of the accused to know and comprehend the nature of the criminal action against him and to make his defense thereto. When the trial court found against the appellant on this issue, he did not find he was of sound mind or sane at the time of the offense charged was committed, which is the issue presented by a special plea of insanity under §9-1701, Burns' 1956 Replacement.

It appears from the record that appellant had been committed to the Central State Hospital. Before such commitment, the law requires a court to find and adjudge the person is insane in fact. Section 22-1207, Burns' 1950 Replacement [Acts 1927, ch. 69, §7, p. 179; 1931, ch. 13, §1, p. 19; 1933, ch. 263, §1, p. 1166]. The insanity adjudicated must involve a definite psychosis. Section 22-1210, Burns' 1950 Replacement. The presumption is appellant remained insane. *State ex rel.*

*Quear* v. *Madison Circuit Court* (1951), 229 Ind. 503, 506, 99 N. E. 2d 254. There is nothing in the statement by the Superintendent of the Central State Hospital to the contrary.

Admittedly, appellant could still be punished for his criminal acts if at the time he had mental capacity to know and comprehend the nature and consequences of his act and could distinguish right from wrong, and had will power sufficient to control his impulse to commit the act charged. *Stevens* v. *State* (1869), 31 Ind. 485; *Bradley* v. *State* (1869), 31 Ind. 492; *Goodwin* v. *State* (1884), 96 Ind. 550; *Plake* v. *State* (1890), 121 Ind. 433, 23 N. E. 273; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528; *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185. But without a special plea of insanity this defense could not be presented and tried.

Appellant's trial counsel was duty bound to present every proper defense the law of the land authorized.

> "It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. Having undertaken such defense, the lawyer is bound, by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law." Canon 5, Canons of Professional Ethics.
>
> "In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense." Canon 15, Canons of Professional Ethics.

The defense of insanity was so apparent that failure to assert it amounted to inadequate representation by

counsel. 26 Ind. L. J., p. 234, *et seq.* and authorities there cited.

Appellant's trial counsel knew he was representing an accused who had been adjudged insane with a definite psychosis, and that the law still presumed him insane. Although it is possible the appellant could be held criminally responsible for the act charged, the conclusion is inescapable that any lawyer who failed to make such a defense only gave perfunctory or casual representation, which is a denial of due process under the Fourteenth Amendment, as well as denial of the right to counsel under §13 of our Bill of Rights. *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *Abraham* v. *State* (1950), 228 Ind. 179, 91 N. E. 2d 358; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389; *Castro* v. *State* (1925), 196 Ind. 385, 147 N. E. 321; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848; *Bradley* v. *State* (1949), 227 Ind. 131, 84 N. E. 2d 580; *Sanchez* v. *State* (1927), 199 Ind. 235, 157 N. E. 1; *State ex rel. White* v. *Hilgemann* (1941), 218 Ind. 572, 34 N. E. 2d 129; *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427; 26 Ind. L. J., p. 234, *et seq.* and authorities there cited.

Appellant's counsel on appeal did not represent him in the trial court. The fact that appellant's brief fails to contend he was denied due process and representation by counsel should not blind us to what this record discloses without contradiction. Many times this court has held it may properly notice the record and the law to be applied even though not properly presented by counsel.

"While we are not obliged to search for errors not made manifest by the record as the appellant brings it to us, we are not so restricted by that rule that we are required to hold a pleading sufficient when it is clearly insufficient, and when to

do so would create a precedent well calculated to mislead the profession and lend confusion to well settled principles of pleading and practice." *Big Creek Stone Co. et al.* v. *Seward et al.* (1895), 144 Ind. 205, 209, 42 N. E. 464, 43 N. E. 5.

"We were compelled to study the bill of exceptions, and, having done so, we were not at liberty to disregard what our eyes perceived as to the facts in their true relation to each other. Where resort to the record is necessary, the case will be determined by the record, and in such a case the court will not regard itself as governed by the conceptions of counsel on either side as to the nature of the controlling facts." *Cleveland, etc. R. Co.* v. *Moore* (1907), 170 Ind. 328, 363, 364, 82 N. E. 52.

"Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs of counsel for reasons upon which to base the decision in order to do justice to the parties." *White* v. *White* (1935), 208 Ind. 314, 317, 196 N. E. 95.

The federal rule is substantially the same.

"Although no objection as to the form of these instructions is urged here by counsel for petitioner, this Court in a criminal case may notice material error within its power to correct, even though that error is not specifically challenged, and certainly should do so, even in cases from the District of Columbia, where life is at stake. *Brasfield* v. *United States,* 272 U. S. 448 . . ." *Fisher* v. *United States* (1946), 238 U. S. 463, 467, 468, 66 S. Ct. 1318, 90 L. Ed. 1382, 166 A. L. R. 1176.[1]

---

1. The following Indiana cases expressly or by implication recognize this salutary rule for deciding appeals: *Thompson* v. *State* (1946), 224 Ind. 290, 66 N. E. 2d 597; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848; *Keeshin Motor Express Co.* v. *Glassman* (1942), 219 Ind. 538, 38 N. E. 2d 847; *Mack* v. *State* (1932), 203 Ind. 355, 180 N. E. 279; *State ex rel. Garn* v. *Board, etc.* (1906), 167 Ind. 276, 78 N. E. 1016; *Scott* v. *City of LaPorte* (1903), 162 Ind. 34, 68 N. E. 278, 69 N. E. 675; *Travelers' Insurance Co.* v. *Prairie School Township et al.* (1898), 151 Ind. 36, 49 N. E. 1, 51 N. E. 100; *Jones et al.* v. *Castor* (1884), 96 Ind. 307; *Martin* v. *Martin* (1881), 74 Ind. 207; *Fairbanks* v. *Warrum* (1914), 56 Ind. App. 337, 104 N. E. 983.

It may be contended that appellant's trial counsel had determined in his own mind that his client was not criminally insane at the time of the commission of the act charged. But he was not a psychiatrist, and we must presume that appellant was committed to the Central State Hospital in conformity with the statutes, and that such commitment was based upon the medical testimony of three doctors. Nor can we presume the medical experts of the Central State Hospital were derelict in their duty in not certifying a restoration of sanity. The probabilities that appellant's uncontradicted insanity, existing at the time of the crime, would affect his ability to know right from wrong, to know and comprehend the nature and consequences of his act and to control his impulse to commit the act are so great that the issue should have been presented. A casual examination of the statutes and the cases involved would have disclosed this was the only proper way to represent this accused and to guarantee him his constitutional rights. I see no reason for this court to affirm this judgment when this record invites other proceedings to adjudicate it void.

I would reverse the judgment.

NOTE.—Reported in 141 N. E. 2d 126.