JACKSON *v.* STATE OF INDIANA.

[Nos. 569-S-110, 569-S-111. Filed February 19, 1970. Rehearing denied May 14, 1970.]

*Robert Robinson, Frank E. Spencer,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Aaron T. Jahr,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged by affidavits with two counts of robbery. There was no trial on either charge of robbery. The only issue considered by the trial court was the mental capacity of the appellant to stand trial. A hearing on the issue resulted in the following order by the trial court:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant Theon Jackson be and hereby is committed to the Indiana Division of Mental Health to be confined until such time that the Division of Mental Health shall certify to this Court that the defendant is sane."

The evidence at the hearing, which was conducted to determine appellant's capacity to stand trial, consisted mostly of the testimony of two psychiatrists the trial court had appointed to examine the appellant. Their examination revealed that appellant was a deaf mute with a moderately severe intellectual defect. Both psychiatrists were of the opinion that appellant could neither understand the nature of the charges against him nor adequately participate in preparing his own defense. Appellant was found to be illiterate, which, when combined with his deaf mute condition, presented a major communication gap. Appellant's mental retardation, or feeblemindedness as one of the experts termed it, was such that his ability to learn sign language, or to learn to read or write, or both, was doubtful. Further testimony revealed that if appellant were to gain sufficient comprehension to stand trial it would be only as a result of developing a means of communication. But even then there was some doubt expressed as to whether appellant would be able to comprehend the charges.

The trial court, in ordering appellant's examination and confinement, acted pursuant to Burns' Ind. Stat. Ann. § 9-1706a (1969 Cum. Supp.) which reads as follows:

"Commitment before trial—Subsequent actions.—When at any time before the trial of any criminal cause or during the progress thereof and before the final submission of the cause to the court or jury trying the same, the court, either

from his own knowledge or upon the suggestion of any person, has reasonable ground for believing the defendant to be insane, he shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two (2) competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense, the trial shall not be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the trial shall be delayed or continued on the ground of the alleged insanity of the defendant. *If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution.* Whenever the defendant shall become sane the superintendent of the state psychiatric hospital shall certify the fact to the proper court, who shall enter an order on his record directing the sheriff to return the defendant, or the court may enter such order in the first instance whenever he shall be sufficiently advised of the defendant's restoration to sanity. Upon the return to court of any defendant so committed he or she shall then be placed upon trial for the criminal offense the same as if no delay or postponement had occurred by reason of defendant's insanity. [Acts 1951, ch. 238, § 2, p. 682, ch. 151, § 2, p. 329; 1963, ch. 91, § 1, p. 58; 1967 ch. 291, § 2, p. 946.] (Emphasis Added)

It is appellant's contention that the above quoted statute is inapplicable; that he was denied due process of law; that in view of the unlikelihood of his improvement, he was in effect given a "life sentence". Appellant further urges that his commitment should properly be to an institute for the feeble-minded and not to an institute for the insane. In this regard appellant would have the appellee first dismiss all charges against the appellant and then make application for appellant's commitment to an institution for the feebleminded.

Appellant makes specific reference to Muscatatuck State Hospital and Training Center which was established to provide care for the feebleminded. Burns' Ind. Stat. Ann. § 22-1801, *et seq.* It appears to us that appellant has failed to understand the statutory mechanisms set up by the legislature as they refer to the Department of Mental Health.

Burns' § 9-1706a, which we quoted above, requires the appellant be committed to "the department of mental health, to be confined by the department in an appropriate psychiatric institution." It is clear that it is the department's function to determine the appropriate facility for the appellant. The choice does not lie with the appellant. Thus, the appellant is to be confined in "an appropriate psychiatric institution." Appellant apparently equates the term "psychiatric institution" with the term "insane" and argues that appellant should not be committed to an institution for the insane. The statute is broader in scope than appellant would have us believe. First, an amendment made to § 9-1706a in 1967 is noteworthy. That amendment replaced the phrase "insane hospital" with the present "psychiatric hospital." That amendment also gave the department more flexibility in dealing with various mental problems by substituting the phrase "the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution" for the phrase "the court shall commit the defendant, whether male or female, to the division for maximum security of the Dr. Norman M. Beatty Memorial Hospital." These changes clearly indicate a broadening of the scope of § 9-1706a to meet such problems as the one herein presented by the appellant's condition. Further, a careful scrutinization of the statutes creating the Department of Mental Health and setting up the mechanism for its functioning clearly dispell appellant's narrow interpretation.

Burns' Ind. Stat. Ann. § 22-5009 designates the institutions over which the commissioner of the Department of Mental

Health is to have control. That statute reads in pertinent part as follows:

"The commissioner of mental health shall have administrative control of and responsibility for all the state-owned and operated *mental health institutions,* including, but not necessarily limited to, the following designated institutions:
(1) Central State Hospital;
(2) Fort Wayne State Hospital and Training Center;
(3) Evansville State Hospital;
(4) New Castle State Hospital;
(5) Richmond State Hospital;
(6) Larue D. Carter Memorial Hospital;
(7) Logansport State Hospital;
(8) *Muscatatuck State Hospital and Training Center;*
(9) Madison State Hospital;
(10) Dr. Norman M. Beatty Memorial Hospital; and
(11) Northern Indiana Children's Hospital. (Emphasis Added)

It is clear from the above statute that Muscatatuck State Hospital and Training Center is a "mental health institution" and is within the control of the department of mental health. Burns' § 22-5003 (9) defines a "mental health institution" as any state owned and operated "psychiatric institution" under the control of the department of mental health, Thus, Muscatatuck State Hospital and Training Center is "an appropriate psychiatric institution" within the meaning of the statute (§ 9-1706a) pursuant to which appellant was committed.

From the foregoing it can be seen that the Department of Mental Health, pursuant to § 9-1706a, is to commit appellant to an appropriate institution; that the available scope of institutions, as set out in Burns' § 22-5009, includes the Muscatatuck State Hospital, the very institute to which appellant aspires; and that the decision concerning the appropriate institution for the appellant is properly to be made by the department. There is nothing to prevent the Department of Mental Health from eventually committing appellant to the institution he now desires. The choice lies within the profes-

sional and expert opinion of the department. It is not for appellant to dictate.

Appellants argument, that the statute in question is unconstitutional because it imprisons appellant possibly for life, must fail. The legislature under its police power may provide for the safety, health, and general welfare. This necessarily includes the confinement, care and treatment of the mentally defective, retarded or insane.

*Morgan* v. *State* (1913), 179 Ind. 300, 101 N. E. 6; *Marx* v. *State* (1957), 236 Ind. 455, 141 N. E. 2d 126; *State ex rel. Mavity* v. *Tyndall* (1947), 225 Ind. 360, 74 N. E. 2d 914, cert. denied, 333 U. S. 834, 68 S. Ct. 609, 92 L. Ed. 1118, rehearing denied, 333 U. S. 858, 68 S. Ct. 732, 92 L. Ed. 1138.

Judgment Affirmed.

Hunter, C.J., Givan, J., concur; Jackson, J., concurs in result; DeBruler, J., dissents with opinion.

## DISSENTING

DEBRULER, J.—The appellant was charged by affidavit with two robberies, totaling $9.00. Appellant is a twenty-seven year old deaf-mute, blind in one eye, who has never been to any school and has only a rudimentary understanding of sign language. He can neither read nor write.

Two psychiatrists and a teacher from the State School for the Deaf interviewed appellant and testified at the hearing on his competence to stand trial. They all agreed that appellant could not comprehend the nature of the charges against him nor assist in his defense because he had a mental deficiency and also because he had almost no means of communication other than a few gestures and pantomines. They also agreed that there was almost no chance that appellant ever could improve his understanding sufficiently to be tried, even if he could gain a means of communication. However, the interpreter from the School for the Deaf stated that he knew of no facilities in this State which could help this appellant. He

also stated the School for the Deaf did not accept mentally retarded persons. Thus, in effect, the commitment of appellant until he can comprehend the nature of the charges against him and assist in his defense is a commitment for life.

Burns' Ind. Stat. Ann. § 9-1706 (a) provides for the commitment to the Department of Mental Health of a criminal defendant who is incompetent to stand trial because he "has not comprehension to understand the proceedings and make his defense." This commitment is for the purpose of giving the psychiatrists a chance to determine what can be done to alleviate the defendant's mental condition so that he can be tried, and a reasonable opportunity to achieve that goal. When the defendant's "sanity" is restored the commitment comes to an end because the purpose of the commitment has been accomplished.

That this is the rationale of the statute can be seen from the statutory language which says:

> "If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense, *the trial shall not be delayed or continued* on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, *the trial shall be delayed or continued* on the ground of the alleged insanity of the defendant. . . . Upon the return to court of any defendant so committed he or she shall then be placed upon trial for the criminal offense the same *as if no delay or postponement* had occurred by reason of defendant's insanity." Acts 1951, ch. 238, § 2, as last amended by Acts 1967, ch. 291, § 2, Burns § 9-1706 (a). (Emphasis added.)

The statute clearly contemplates a *delay* in the trial or a *postponement*, which implies that the commitment to the psychiatric institution is a temporary one.

When the defendant's condition is permanent, as in this case and he cannot be helped by any known psychiatric technique, then the defendant cannot be committed under this

statute because the *purpose* of the commitment cannot be accomplished.

What then is the purpose of the confinement of this appellant whose condition is permanent. Punitive? Protection of society? Protection of the appellant? Confinement to serve any of these purposes based merely on a trial court finding that appellant "has not comprehension to understand the proceedings and make his defense" in my opinion would violate the due process clause of the 14th Amendment to the United States Constitution. Appellant has not been convicted of any crime, nor found to be dangerous to the community or himself. It has not been shown that he .cannot continue to live in our society as he has for twenty-seven years. What conceivable basis is there for committing this appellant to a psychiatric institution for, what is in effect, life?

Clearly, the real basis for this commitment is the existence of the criminal charges against appellant. This is shown by the fact that if those charges were to be dismissed because another person confessed and plead guilty to those crimes, or the complainant admitted he had lied in making the .charges, the commitment of appellant under Burns' § 9-1706 (a), *supra,* would obviously be ended. Thus, the existence of *unproved criminal charges* operates to keep appellant confined in a state institution for life. This is a blatant violation of the due process clause of the 14th Amendment to the United States Constitution. For a case interpreting the federal statutes on this point see *U. S.* v. *Curry* (1969), 410 F. 2d 1372.

A permanent or open ended commitment under Burns' § 9-1706 (a) would also violate the equal protection clause of the 14th Amendment to the United States Constitution. In order to civilly commit a mentally deficient person the court would have to find that the person, because of a "psychiatric disorder", which includes mental deficiency, requires care, treatment, training or detention in the interest of the welfare of such person or the welfare of others of the community in

which such persons reside. Burns' § 22-1201 (1) and (2). There has never been such a finding in this case and there is no rational basis for treating appellant differently than another person who is to be civilly committed. The existence of criminal charges against appellant is not a rational basis for such a discrimination. *Buxtrom* v. *Herold* (1966), 383 U. S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620; *U. S. ex rel. Schuster* v. *Herold* (1969), 410 F. 2d 1071.

The majority opinion, in effect, holds that this technique is within the State's police power to provide for the safety, health and general welfare. I strongly dissent. The majority opinion's summary disposition of this important federal question is not a correct resolution of this issue.

NOTE.—Reported in 255 N. E. 2d 515.